**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald Joseph KNAPP, Defendant–**
**Appellant.**

No. 92–1243.

United States Court of Appeals,
Tenth Circuit.

July 23, 1993.

John M. Hutchins, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty.; Charlotte J. Mapes, Asst. U.S. Atty., with him on the briefs), Denver, CO, for plaintiff-appellee.

Virginia L. Grady, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, CO, for defendant-appellant.

Before MOORE, BALDOCK and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

A jury convicted Mr. Knapp of manufacturing, distributing and possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Mr. Knapp appeals asserting that evidence seized pursuant to two search warrants should have been suppressed.

The disputed evidence was seized from two separate dwellings. The first dwelling was an uninhabited house where Mr. Knapp conducted a marijuana growing operation. Mr. Knapp contends the trial court erred in finding that the officer's affidavit supporting the search warrant did not contain knowing or reckless misstatements of fact or material omissions. Mr. Knapp also argues the law enforcement agents improperly searched the curtilage of this house by walking around to the backyard prior to obtaining the search warrant. Upon executing the search of the second dwelling, Mr. Knapp's residence, the officers knocked and announced their purpose before smashing in Mr. Knapp's front door with a battering ram. Mr. Knapp contends the execution of the warrant was unlawful because the law enforcement agents only waited ten to twelve seconds after knocking before they entered the residence.

■ In reviewing the denial of a motion to suppress, we accept the trial court's findings of fact unless they are clearly erroneous and we view the evidence on appeal in a light most favorable to the government. *United States v. Soto–Ornelas,* 863 F.2d 1487, 1490 (10th Cir.1988).

## I.

We first examine the facts supporting the issuance of the search warrant for the uninhabited house. An affidavit submitted by Agent Olachea, the investigating agent from the Drug Enforcement Administration, was instrumental in obtaining the warrant. According to the affidavit, a confidential informant, Kevin Riley, told law enforcement officers that Mr. Knapp had a marijuana growing operation in the uninhabited house. Mr. Riley estimated that there were 150 marijuana plants in the house, and observed the smell of marijuana throughout the house. Apparently, Mr. Knapp wanted to hire Mr. Riley as a caretaker of the marijuana plants in exchange for living quarters. Mr. Riley also related that Mr. Knapp required him to duck down in the car en route to the uninhabited house in order to conceal its exact location.

Agent Olachea's affidavit also revealed similar information gained from a second informant, Shawn Waller. Mr. Waller stated that Mr. Knapp was growing forty to sixty marijuana plants which were sold for $250 to $300 per ounce. On one occasion, Mr. Waller accompanied law enforcement officers to the grow operation to identify the location of the uninhabited house. Subsequently, with the authority of drug enforcement agents, Mr. Waller made a wired, controlled buy from Mr. Knapp. During the controlled buy, Mr. Knapp related to Mr. Waller the expense of maintaining the growing operation at the uninhabited house. The affidavit further stated that before obtaining a search warrant for the uninhabited house, the drug enforcement agents drove to the house, knocked on the front door, and received no response. The officers then walked around to the back of the house and observed a strong odor of marijuana near the electric meter. The agents did not cross any fences to make these observations. Agent Olachea determined the utilities at the uninhabited house were registered to Ron Joseph. Mr. Knapp's full name is Ronald Joseph Knapp. Agent Olachea's four-page affidavit contained substantial detail and precision regarding dates and locations, and the magistrate correspondingly issued a search warrant for the uninhabited house. When the warrant was executed, no one was present in the house and growing marijuana was found behind a false wall in the basement together with equipment designed to facilitate the growing.

At the suppression hearing, the defendant presented evidence that conflicted with the information contained in the affidavit. Agent Olachea's testimony mirrored the information that he had provided in his affidavit. Kevin Riley appeared for the defense and denied making all statements attributed to him. Specifically, Mr. Riley testified that although he was at the uninhabited house he did not observe any evidence of a marijuana growing operation. The defense also presented testimony of an investigator from the public defender's office who had interviewed Mr. Waller in relation to Mr. Knapp's case. According to the investigator, Mr. Waller denied that he accompanied law enforcement officers to the uninhabited house, or that he participated in the recorded controlled buy of marijuana from Mr. Knapp. Mr. Knapp therefore assumes the statements contained in Agent Olachea's affidavit were intentionally or recklessly false, and asserts that without these statements no probable cause existed and the search warrant should not have been issued.

■ According to the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), when a defendant shows that an affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause. The burden was on Mr. Knapp to demonstrate falsity or reckless disregard for the truth in Agent Olachea's affidavit. *United States v. Sullivan*, 919 F.2d 1403, 1424 (10th Cir.1990). In reviewing the motion to suppress, the district court properly focused on the credibility of the affiant, Agent Olachea. *See United States v. Corral–Corral*, 899 F.2d 927, 934 (10th Cir.1990).

■ Mr. Knapp argues the trial court erred by accepting the credibility of Agent Olachea over the recanted testimony of the two informants. We give deference to the

trial court in determining the credibility of witnesses. We note that Mr. Waller's denial of his presence at the recorded controlled buy gives some indication as to his credibility. Agent Olachea's affidavit and subsequent testimony are supported by the record, and it certainly was not clearly erroneous for the district court to accept his testimony over that of the recanting informants.

■ Moreover, Mr. Knapp could not show that any potential inaccuracies in the affidavit were deliberate falsities on the part of Agent Olachea. "It is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit." *United States v. Owens,* 882 F.2d 1493, 1499 (10th Cir.1989). Therefore, as long as the affidavit reflected what Agent Olachea believed to be true, the warrant was properly issued.

■ Mr. Knapp next contends the affidavit supporting the search warrant omitted two very significant facts. The first was that Mr. Riley's information regarding Mr. Knapp's grow operation was at least six months old. The second related to the fact the government failed to disclose the benefits conferred upon Mr. Waller for his cooperation. This Circuit has extended *Franks* to hold that it is a Fourth Amendment violation to knowingly or recklessly *omit* from an affidavit information that would have vitiated probable cause. *Stewart v. Donges,* 915 F.2d 572, 582–83 (10th Cir.1990). Although the evidence omitted from the affidavit would have been marginally beneficial to Mr. Knapp, the omissions were not vital to the magistrate's probable cause determination. A review of the affidavit shows probable cause existed assuming the omitted facts were therein contained. Thus, the district court properly denied the motion to suppress based on the veracity of the affidavit.

■ Mr. Knapp next contends the drug enforcement agents violated his Fourth Amendment rights by going into the unfenced portion of Mr. Knapp's yard without a warrant. Only the curtilage of the home warrants the Fourth Amendment protections that attach to the home itself. *Oliver v.*

*United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984). "[C]urtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Id.* (quoting *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)). The district court's determination that the unenclosed area should not be considered curtilage was factual and therefore subject to a clearly erroneous standard of review. *United States v. Swepston,* 987 F.2d 1510, 1513 (10th Cir.1993).

In *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987), the Court held four factors should be considered in determining whether areas around a house are given the Fourth Amendment protection of curtilage: (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the use of the area searched; and (4) steps taken by the resident to protect the area from observation.

■ Applying the *Dunn* factors, we hold the drug enforcement agents committed no violation of the Fourth Amendment by going into the unfenced and unenclosed portion of the yard. Although the agents made their observations from close proximity to the house, the other three *Dunn* factors tend to indicate the defendant did not have a reasonable expectation of privacy for this area. The unenclosed portion of the yard extended into an open field which, in turn, was fronted by a highway. There is no indication in the record that Mr. Knapp attempted to shield the unenclosed portion of the yard from public view, nor is there any evidence that Mr. Knapp had any particular use for this area. On balance, the area near Mr. Knapp's utility meter was not so intimately tied to the uninhabited house that it enjoyed Fourth Amendment protection. *See Swepston,* 987 F.2d at 1513–15. Moreover, we are comfortable that probable cause to search the uninhabited house was present even without Agent Olachea's observation of the odor. Thus, the denial of the motion to suppress was appropriate.

## II

We now address the execution of the warrant on Mr. Knapp's residence. The facts surrounding this event are essentially undisputed. The officers were aware that Mr. Knapp was an amputee, and suspected that he was home since lights were on in the house. Additionally, the officers knew Mr. Knapp could not readily dispose of the marijuana and did not believe Mr. Knapp was dangerous. The agents heard nothing as they approached the door. Agent Olachea knocked three times and announced, "DEA. We've got a warrant. Open the door." After hearing no sounds from within for ten to twelve seconds, the officers broke the door down with a battering ram. The trial court found the law enforcement agents waited a reasonable period of time before making a forced entry. "We accept the trial court's findings of fact unless clearly erroneous when reviewing the denial of a motion to suppress, considering the evidence in the light most favorable to the government." *United States v. Peveto*, 881 F.2d 844, 851 (10th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

■ Mr. Knapp contends these facts establish a violation of the "knock and announce rule" codified in 18 U.S.C. § 3109. The relevant portion of 18 U.S.C. § 3109 reads: "[t]he officer may break open any . . . door . . . of a house . . . to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance." "The purpose of 18 U.S.C. § 3109 is to restrict the authority of the government to intrude upon the privacy of its citizens, and to protect law enforcement officers who might be mistaken as unlawful intruders." *United States v. Remigio*, 767 F.2d 730, 732 (10th Cir.), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985). Evidence seized must be suppressed as the fruit of an unlawful search if the officers failed to comply with the knock and announce statute. *United States v. Ruminer*, 786 F.2d 381, 383 (10th

Cir.1986). "There is a presumption of government propriety, however, and the defendant bears the burden to establish a prima facie case that § 3109 has been violated." *Peveto*, 881 F.2d at 850-51.

■ Compliance with § 3109 may be excused only when exigent circumstances exist. *United States v. Stewart*, 867 F.2d 581, 584 (10th Cir.1989). In this case, the officers waited for ten to twelve seconds without hearing any noise from inside the residence. Mr. Knapp could not readily dispose of his marijuana as it was kept in Mason jars, and could not move very quickly due to his amputated leg.[1] Thus, the officers were unaware of any exigent circumstances that would permit them to disregard the knock and announce requirement of § 3109.[2] Therefore, the critical issue is whether the officers were constructively refused admittance under § 3109 by waiting ten to twelve seconds without receiving a response.

■ "It is well established that 'the phrase "refused admittance" [in § 3109] is not restricted to an affirmative refusal,' but encompasses circumstances that constitute constructive or reasonably inferred refusal." *United States v. Bonner*, 874 F.2d 822, 824 (D.C.Cir.1989) (citation omitted). Whether the officers violated the knock and announce requirement depends upon the particular circumstances surrounding the execution of the warrant. *Jones v. United States*, 362 U.S. 257, 272, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). "The time that § 3109 requires officers to wait before they may construe no response as a denial of admittance depends largely on factual determinations made by the trial court." *Ruminer*, 786 F.2d at 383-84 (quoting *United States v. Davis*, 617 F.2d 677, 695 (D.C.Cir.1979), *cert. denied*, 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980)). Consequently, there is no concrete rule requiring the officers to wait a specific period of time before entry. *See Ruminer*, 786 F.2d at 384 (officers' wait of five to ten seconds

---

1. We note, however, that Mr. Knapp had enough mobility to answer the door as he utilized a wooden prosthesis.

2. Upon entry, the officers found a switchblade, two firearms, and evidence that cocaine was being cut. The officers had no knowledge of these exigencies, however, prior to their forced entry.

reasonable after observing occupant leave the room).

Under the facts of this case, we hold the district court's determination that the agents waited a reasonable period of time was not clearly erroneous. Mr. Knapp gave no indication that he intended to voluntarily permit the officers to enter the residence. It was plausible for the officers to conclude that they were affirmatively refused entry after a ten to twelve second interval without a verbal or physical response. We therefore hold that the district court's denial of the motion to suppress evidence obtained from Mr. Knapp's residence was not clearly erroneous.

The judgment of the District Court is AFFIRMED.