2006-NMSC-049

146 P.3d 298

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Randy JOHNSON, Defendant–Respondent.**

**No. 28,2660.**

Supreme Court of New Mexico.

Oct. 17, 2006.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

MAES, Justice.

{1} Defendant Randy Johnson was charged with trafficking by manufacturing methamphetamine and possession of drug paraphernalia. Defendant moved to suppress the evidence on the basis that the officers violated the requirement that officers must knock and announce their presence and purpose when executing a search warrant. After the trial court denied the motion, Defendant appealed the issue. The Court of Appeals reversed the trial court's denial of the motion, concluding that no exigent circumstances existed and in the absence of exigency, the police violated the knock-and-announce rule. We granted certiorari and hold that the officers did not violate the rule because they knocked and announced their presence and purpose for at least ten seconds before forcibly entering Defendant's motel room. Under the totality of the circumstances, this interval was a reasonable length of time to conclude that they were being denied admittance.

## I. Background

{2} At 6:15 a.m. on a Saturday morning, several Bernalillo County deputies executed a valid warrant to search Defendant's motel room. Detective John Sharkey initiated the search by knocking forcefully on Defendant's door, shouting "Sheriff's Department" and "Search Warrant" repeatedly as he did so. After a period of at least ten seconds with no response from inside the room, a second officer, Detective Chavez, began using a bat-tering ram to break the locked door. During the period of approximately twelve seconds it took Detective Chavez to break open the door, Detective Sharkey continued to announce the officers' presence and purpose. After at least six swings with the battering ram, the door gave way and the officers entered the room.

{3} When the officers entered, Defendant was standing just inside the door. The officers testified that a haze was emanating from the bathroom. Inside the bathroom, the officers found methamphetamine as well as the makings of a methamphetamine lab, including chemicals, tubing, glassware, and containers.

{4} Defendant filed a motion to suppress all evidence seized, arguing that police did not wait a reasonable amount of time before forcibly entering his motel room and that no exigent circumstances existed to justify the shortened waiting time. The trial court conducted a hearing on the motion. In that hearing, police witnesses testified that they had obtained the search warrant three days before it was executed. The warrant was based on information the officers received indicating that methamphetamine was being sold out of the room, which police then confirmed by conducting two controlled buys. In the affidavit accompanying the search warrant, Detective Sharkey stated that methamphetamine would be found in the room, in addition to materials for "packaging, distribution, weighing, diluting, cooking, injection, sale or other possession." The warrant did not contain any information relating to weapons or the possibility of violence by Defendant. Police did not request that a "no-knock" provision be included in the warrant.

{5} The trial court denied the motion to suppress, finding that the circumstances surrounding the search justified the police officers' forcible entry. The trial court emphasized that Detective Sharkey knocked and announced the officers' presence and lawful purpose for at least ten seconds before the battering began. The court found that there was a minimum of twelve additional seconds during which the door was being battered and noted that during the entire period be-

fore the door was forced open, there was no verbal or physical response from within the room. As a result, the court concluded that "[w]hile there [was] no absolute refusal to open the door ... there was constructive refusal." The court noted the small size of the motel room, with dimensions of approximately twelve feet by twelve feet, and the fact that the bed was within three or four feet of the doorway. The trial court also stated that because it took Detective Sharkey only a few steps to walk through the room, a shorter period of time was required for response before forced entry. Therefore, the trial court found that the officers acted reasonably and appropriately in executing the search warrant and entering Defendant's motel room.

{6} After the trial court denied the suppression motion, Defendant entered a conditional guilty plea to the trafficking charge. The possession charge was dropped. Defendant reserved the right to appeal the suppression issue.

{7} On appeal, the Court of Appeals first determined that the trial court erred in including the time during which the officers were battering the door in its calculation of the total wait time. *State v. Johnson*, 2004–NMCA–064, ¶ 7, 135 N.M. 615, 92 P.3d 61. Thus, the Court of Appeals determined that the officers waited ten seconds before entering, not the twenty-two to thirty seconds found by the trial court. Second, the Court of Appeals concluded that there was no particularized information indicating that the officers had an objectively reasonable belief of exigent circumstances. *Id.* ¶ 11. Finally, the Court found that ten seconds was an unreasonable period of time for the officers to infer that Defendant refused to open the door. *Id.* ¶ 15. Based on these findings, the Court held that the search was not constitutionally reasonable and the evidence should have been suppressed. *Id.*

{8} The State argues that the Court of Appeals erred in failing to afford proper deference to the trial court's factual finding that the time frame before forcible entry was twenty-two to thirty seconds. The State also argues that even if the officers only waited ten seconds before using force to enter, this

was a reasonable period of time under the totality of the circumstances.

## II. Discussion

{9} "The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Lopez*, 2005–NMSC–018, ¶ 9, 138 N.M. 9, 116 P.3d 80 (quoting *State v. Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856). "The appellate court must defer to the district court with respect to findings of historical fact so long as they are supported by substantial evidence." *Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (citing *State v. Attaway*, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994)). "[A]ll reasonable inferences in support of the [district] court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *Id.* (quoting *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994)). Deferring to the trial court with respect to factual findings and indulging all reasonable inferences in support of the trial court's decision to deny the motion to suppress, we review the constitutional question of the reasonableness of a search and seizure de novo. *See Attaway*, 117 N.M. at 144–46, 870 P.2d at 106–08.

{10} The general rules governing United States Constitution Fourth Amendment search and seizure issues are fairly well established. "In New Mexico, law enforcement officers are constitutionally required to knock and announce their identity and purpose, and wait a reasonable time to determine if consent to enter will be given prior to forcefully entering a [dwelling] in order to execute a search warrant." *State v. Vargas*, 1996–NMCA–016, ¶ 5, 121 N.M. 316, 910 P.2d 950 (citing *Attaway*, 117 N.M. at 150–51, 870 P.2d at 112–13). The knock-and-announce rule serves multiple purposes. It helps to protect the constitutional right of citizens to be free from unreasonable searches and seizures, while also providing law enforcement with clear standards of conduct in the execution of search warrants and the seizure of evidence. *Attaway*, 117 N.M. at 149, 870 P.2d at 111. The rule also serves the more

specific purposes of "preventing needless destruction of private property, eliminating unnecessary intrusions upon privacy, and reducing the risk of violence both to police and occupants." *Id.* at 150, 870 P.2d at 112. Compliance with the rule may be excused if exigent circumstances exist. *Id.* at 149–50, 870 P.2d at 111–12 (citing *State v. Baca*, 87 N.M. 12, 13–14, 528 P.2d 656, 657–58 (N.M.Ct.App.1974)). The ultimate question regarding an alleged search and seizure violation is whether the search and seizure was reasonable. *Attaway*, 117 N.M. at 149, 870 P.2d at 111 (citing *State v. Martinez*, 94 N.M. 436, 440, 612 P.2d 228, 232 (1980)).

■ {11} We first consider whether the Court of Appeals erred in its determination that the officers waited only ten seconds after knocking and announcing and before forcing entry, as opposed to the twenty-two to thirty seconds calculated by the trial court. *See Johnson*, 2004–NMCA–064, ¶ 8, 135 N.M. 615, 92 P.3d 61. We agree with the Court that as soon as the officers began forcibly battering the door, one of the stated purposes of the knock-and-announce requirement, the prevention of needless destruction of property, was no longer served. *See id.* The State's argument that hitting the door with a battering ram was merely a "louder, more aggressive contact with the door," which was "part of the knock and announce process," is illogical. Defendant could not reasonably be expected to open the door while it was being battered. When the officers began hitting the door with the battering ram, they ceased "knocking" and began "entering." *See United States v. McCloud*, 127 F.3d 1284, 1289 n. 2 (10th Cir.1997) ("[O]ur review of precedent indicates that the reference point for the reasonableness determination is the amount of time between when the officers begin to announce their presence and when the officers hit the door with a battering ram or other implement which could destroy the door and allow them entry."). We affirm the Court of Appeals' decision to exclude the twelve to twenty seconds of battering from the overall wait time of the officers.

{12} Proceeding with the relevant time interval of ten seconds, we must next determine whether this was a reasonable amount of time for the officers to wait before forcing entry. As stated above, if exigent circumstances exist, noncompliance with the knock-and-announce rule may be justified. Absent exigent circumstances, officers must knock and announce their purpose and identity, then wait a reasonable period of time to determine if consent to enter will be given before forcefully entering. We agree with the Court of Appeals that in this case no exigent circumstances existed; therefore, the entry was reasonable only if ten seconds was a sufficient amount of time for the officers to infer that Defendant refused to answer the door.

■ {13} In deciding this issue, there are no bright-line rules. *See United States v. Jenkins*, 175 F.3d 1208, 1213 (10th Cir.1999) ("This court has not established a clear-cut standard by which to determine the amount of time officers must wait after knocking and announcing before forcibly entering a [dwelling]."). We must look at the totality of the circumstances. *See United States v. Banks*, 540 U.S. 31, 36, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) ("Instead, we have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case...."); *Lopez*, 2005–NMSC–018, ¶ 16, 138 N.M. 9, 116 P.3d 80 ("[W]e wish to clarify that the facts of this case or any ... case should not be pigeonholed into a set category; instead, each case must be viewed under the totality of the circumstances present.").

{14} There is no New Mexico case law directly on point. Courts in other jurisdictions also look at the totality of the circumstances when determining this issue. The United States Tenth Circuit Court of Appeals, while finding three seconds to be unreasonable, has found that ten seconds is reasonable. *See Jenkins*, 175 F.3d at 1213 (contrasting prior cases). In *Jenkins*, the court found that the district court properly denied the motion to suppress based on the district court's holding that the amount of time was reasonable under the circumstances. *Id.* at 1215. The court stated that it had not established a "clear-cut standard"

to determine how long officers must wait after knocking and announcing before forcibly entering. *Id.* at 1213. Again in *United States v. Knapp,* 1 F.3d 1026 (10th Cir.1993), the Tenth Circuit Court of Appeals affirmed the trial court's denial of the defendant's motion to suppress, finding that the officers waited a reasonable amount of time before forcing entry. The court stated that "there is no concrete rule requiring the officers to wait a specific period of time before entry." *Id.* at 1030. "It was plausible for the officers to conclude that they were affirmatively refused entry after a ten to twelve second interval without a verbal or physical response." *Id.* at 1031.

{15} In the present case, the trial court found the following: (1) the size of the motel room was no larger than twelve feet by twelve feet; (2) the bed was within three or four feet of the door; (3) the officers knocked while announcing notice of presence, identification of authority, and statement of lawful purpose for at least ten seconds before using the battering ram; (4) Defendant must have been within twelve feet of the door at the time of the attempted entry; and (5) there was no response from inside the room during the entire time the officers were knocking and announcing. Based on these facts, the court found that there was constructive refusal to answer the door.

{16} Our Court of Appeals held that ten seconds was an insufficient amount of time to infer that Defendant refused to answer the door. The Court admitted that "[c]ase law provides no magic number of seconds after which officers may constitutionally enter," *Johnson,* 2004–NMCA–064, ¶ 13, 135 N.M. 615, 92 P.3d 61, but then compared the facts of this case to the facts in *Attaway,* stating:

> This case presents a similar number of seconds and time of day as in *Attaway,* which characterized ten to fifteen seconds at 6:00 a.m. on a Saturday as "extremely short" but ultimately acceptable because of exigent circumstances. Subtracting the exigency from the equation, we are left with an interval of time that is too short altogether.

*Id.* ¶ 15, 870 P.2d 103 (internal citation omitted). While in *Attaway* this Court held that

the interval of time that the officers waited was extremely short but justified due to exigency, it was not our intention to create a rule that absent exigency, ten seconds is unreasonable per se, or that ten seconds can never be a sufficient amount of time to infer denial of entry. The dissent states that the Court of Appeals in the present case did not apply a bright-line rule from *Attaway.* However, the language above indicates that the Court of Appeals "decide[d] the question in Defendant's favor" by comparing the facts in this case to the facts in *Attaway* and then "subtracting the exigency from the equation." *Id.*

{17} Viewing the totality of the circumstances in the present case, particularly the small size of the motel room and the fact that Defendant did not respond in any way, we agree with the trial court that it was reasonable for the officers to believe that they were being denied entrance after at least ten seconds of repeated knocking and announcing their purpose and identity. Refusal to consent to enter does not have to be explicit. "If the occupants do not admit the officers within a reasonable period of time [after they have knocked and announced their presence and purpose], the officers may be deemed to be constructively refused admittance, and they may then enter by force." *Jenkins,* 175 F.3d at 1213 (quoted authority and quotation marks omitted).

{18} The dissent advances a different possibility, stating "it is plausible that Defendant was asleep when officers knocked on his motel room door ..." and that "it is not clear that the officers were aware of how small the room was or where the bed was located or where Defendant was before they entered." However, it is also plausible that Defendant, even if asleep when the officers arrived, awoke when they began to knock and announce their identity, and intentionally remained silent. Additionally, it is reasonable to assume that the officers were aware of the size of the motel room before they entered. As indicated in the affidavit for the search warrant, Detective Sharkey executed two controlled purchases of methamphetamine from Defendant's motel room, one with a narcotics agent and one with Detective Cha-

vez, where they witnessed the confidential source enter and exit the room. Even though Detective Sharkey testified that after he entered the room, he realized it was "very, very small," there is no indication that he and the other officers were completely unaware of the approximate size of the room prior to entering. It was reasonable for them to infer that the room was small, and that Defendant and the bed would be in close proximity to the door. Because we indulge in all reasonable inferences to support the trial court's decision to deny the motion to suppress, and disregard any contrary inferences, we affirm the trial court on this issue. *See State v. Duran,* 2005–NMSC–034, ¶ 19, 138 N.M. 414, 120 P.3d 836.

### III. Conclusion

{19} We agree with the Court of Appeals that this case represents a close call. We conclude that the trial court erred in including the period of time during which the officers were using the battering ram as part of the knock and announcement, but that it was correct in refusing to suppress the evidence obtained as a result of the search. Accordingly, we affirm the Court of Appeals on the issue of excluding the battering time, and we reverse the Court of Appeals on the issue of constructive refusal and affirm the district court's denial of Defendant's motion to suppress.

{20} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PATRICIO M. SERNA, and EDWARD L. CHÁVEZ, Justices.

PAMELA B. MINZNER, Justice (concurring in part and dissenting in part).

MINZNER, Justice (concurring in part and dissenting in part).

{21} I concur in part and dissent in part. I concur in the standard of review applied by the Majority Opinion and I concur in affirming the Court of Appeals' determination that the officers waited only ten seconds after knocking and announcing and before forced entry. Maj. Op. ¶¶ 1, 9, 11. I also concur in affirming the Court of Appeals' determination that no exigent circumstances existed.

*Id.* ¶ 12. I dissent from the Majority Opinion that ten seconds was a sufficient amount of time for the officers to infer that Defendant refused to answer the door, or to find a constructive refusal to admit. *Id.* ¶ 17. Therefore, I believe the Court of Appeals did not err in reversing the trial court's order denying Defendant's motion to suppress. I would affirm the Court of Appeals' Opinion in its entirety.

{22} Under the totality of circumstances I believe a ten-second wait was not sufficient to conclude that the officers were constructively denied admittance. In ¶ 17, the Majority Opinion relies on "the totality of the circumstances ... particularly the small size of the motel room and the fact that Defendant did not respond in any way," to repeated knocking and announcing. In my opinion, however, our totality of circumstances analysis also should include the fact that the search warrant was executed on a dark Saturday morning at 6:15, Detective Sharkey testified that he could not recall if there were any lights on in the room when the warrant was executed, and there was no verbal or physical response from within the room after the officers announced their presence. Furthermore, Detective Sharkey testified as follows:

> The reason I do serve search warrants at such an early time of the day was several fold. The one reason that is of utmost concern is there is a very strong possibility that the person who is going to be the subject of the actual search warrant being served will be resting, be asleep, and it would take them a little bit longer if they were to choose to arm themselves.

Absent evidence indicating that Defendant was awake, it is plausible that Defendant was asleep when officers knocked on his motel room door and shouted "Sheriff's Department!" and "Search Warrant." *See State v. Johnson,* 2004–NMCA–064, ¶ 15, 135 N.M. 615, 92 P.3d 61 (noting "the officers heard no sounds suggesting that Defendant was awake-either to answer the door or to destroy evidence"). Even though Defendant was standing just inside the door when the officers entered, *see* Maj. Op. ¶ 3, the officers did not know where Defendant was before

they entered the room. Detective Sharkey also could not recall whether Defendant was dressed or in his underwear when officers entered the motel room. It is possible that Defendant was asleep, heard the commotion outside, was awakened, and tried to put some clothes on before the officers broke his door down. Just as we are not sure whether Defendant was awake when the officers announced their entry, the officers also did not know whether Defendant was awake.

{23} The Majority Opinion notes that the trial court found that the motel room was no larger than twelve feet by twelve feet, the bed was within three or four feet of the door, and Defendant must have been within twelve feet of the door at the time of the attempted entry; however, it is not clear that the officers were aware of how small the room was or where the bed was located or where Defendant was before they entered. *See* Maj. Op. ¶ 18. In fact, Detective Sharkey testified, "As I went through the hotel room, I realized it was a very, very small hotel room." Based on his testimony, it seems reasonable to conclude that the small size of the room was not apparent until after the officers entered Defendant's room.

{24} The early hour on a Saturday, the possibility that Defendant was asleep, and the officers' lack of knowledge that the room was so small are all factors that should be weighed in our analysis. In my opinion, a ten-second wait under the totality of circumstances was not sufficient and the officers' noncompliance with the knock and announce rule was not justified.

{25} The Court of Appeals analogized the present case to *State v. Attaway*, 117 N.M. 141, 870 P.2d 103 (1994). *See Johnson*, 2004–NMCA–064, ¶ 15, 135 N.M. 615, 92 P.3d 61. In *Attaway*, the police waited ten to fifteen seconds at 6:00 a.m. on a Saturday. *Id.* In the present case, the police waited ten seconds at 6:15 a.m. on a Saturday. *Id.* The Court of Appeals then distinguished the two cases because in *Attaway* this Court ultimately concluded that ten to fifteen seconds was acceptable due to exigent circumstances, while there was no exigency in this case. *Id.* The Court of Appeals concluded that because this Court stated in *Attaway* that ten to

fifteen seconds at 6:00 a.m. on a Saturday was an " 'extremely short' " period of time, *id.* (quoting *Attaway*, 117 N.M. at 153, 870 P.2d at 115), and because no exigencies existed in the present case, "[t]he search was not constitutionally reasonable, and the results of the search should have been suppressed." *Id.* I agree with the Court of Appeals' reasoning and conclusion.

{26} In discussing *Attaway*, the Majority Opinion states "it was not our intention to create a rule that absent exigency, ten seconds is unreasonable per se, or that ten seconds can never be a sufficient amount of time to infer denial of entry." Maj. Op. ¶ 16. I agree and I do not think the Court of Appeals was relying on *Attaway* as a bright-line rule that absent exigent circumstances, ten seconds would never be sufficient. Rather the Court of Appeals was comparing the relevant facts in this appeal with the relevant facts in *Attaway*. As a matter of law, the Court of Appeals could not determine a constructive refusal to admit based on the facts of this case.

{27} Applying a totality of circumstances analysis, I also am not persuaded that ten seconds was a sufficient amount of time to conclude that Defendant refused to answer the door. For this reason, I am not able to join the Majority Opinion in its entirety. I concur in part and I dissent in part.

2006-NMSC-048