This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellant,

v.                                                                          **NO.  28,738**

**JOSE LUIS ROSAS**,

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellant

Whitley Law Firm
L. Val Whitley
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**ROBLES, Judge.**

The State appeals an order granting Defendant's motion to suppress evidence. The district court listened to the officers' belt tapes and ruled that the officers failed to comply with the knock-and-announce rule. It found that there was no knocking prior to entry, that the announcement and forcible entry into Defendant's home appeared to be simultaneous, and it suppressed the evidence. The State appeals, contending that the court's findings are inadequately supported and, if there was partial compliance with the knock-and-announce rule, it was justified by exigent circumstances. We conclude that the belt tapes provide substantial evidence supporting the court's findings, agree with the court's conclusion that the entry was illegal, and affirm the order suppressing evidence.

I.    BACKGROUND

On May 1, 2007, officers executed a search warrant at Defendant's residence. They expected Defendant, his wife, and two small children between the ages of five and ten years old to be there. The operation plan called for teams of officers at both the front and back doors. The plan was for the back door to be breached as close to the breaching of the front door as possible.

We have reviewed the belt tapes of six officers. On some of the tapes, the order of "breacher up, breacher up" can be heard. One second later, police began to yell, "State Police! Search warrant!" over and over. Although it is not entirely clear, on some of the tapes, some sort of bang can be heard approximately three to four seconds after the yelling begins. The tapes consistently indicate that the door was breached almost immediately after the police began announcing, and at no point did the officers knock or wait before forcibly entering the home.

## II. DISCUSSION

### A. Standard of Review

"The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Hand*, 2008-NMSC-014, ¶ 6, 143 N.M. 530, 178 P.3d 165 (internal quotation marks and citation omitted). "We review the district court's purely factual assessments to determine if [they are] supported . . . by substantial evidence." *Id.* (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks) (quoting *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776). After deferring to the court's factual findings, we review the

constitutional question whether the search and seizure was reasonable de novo. *See Hand*, 2008-NMSC-014, ¶ 6.

**B.     Knock-and-Announce Rule**

The knock-and-announce rule requires that officers entering a residence to execute a search or arrest warrant, knock and announce their identity and purpose, and then wait a reasonable time to determine whether consent to enter will be given. *See State v. Vargas*, 2008-NMSC-019, ¶ 9, 143 N.M. 692, 181 P.3d 684; *State v. Johnson*, 2006-NMSC-049, ¶ 10, 140 N.M. 653, 146 P.3d 298; *State v. Attaway*, 117 N.M. 141, 149-50, 870 P.2d 103, 111-12 (1994), *modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶¶ 13-20, 138 N.M. 9, 116 P.3d 80. "There are no bright line rules establishing how long . . . officers must reasonably wait," and "we consider the totality of the circumstances to determine whether the officers' wait was reasonably long enough." *Hand,* 2008-NMSC-014, ¶ 7 (citations omitted).

The district court found that "[the belt tapes] indicate that there was no knock prior to entry into the home. There is clearly an announcement of the search, but it appears to be simultaneous with entry into the home." The State disagrees with the court's findings, contending that the officers began announcing, and six seconds elapsed until a banging sound can be heard. The State equates this sound with the first strike of the battering ram and concludes that officers waited six seconds. It argues

that a six-second wait is sufficient to demonstrate compliance with the knock-and-announce rule.  There is, however, no citation to a specific belt tape, and we did not hear anything on the belt tapes indicating a six-second period between announcement and forcible entry.

We defer to the district court's factual determinations.  *See State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (observing that the reviewing court must "defer to the district court with respect to findings of historical fact," and all "reasonable inferences in support of the [district] court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded."  (alteration in original) (internal quotation marks and citation omitted)).  We have listened to the belt tapes and do not hear a banging sound.  On a number of the belt tapes, we do hear some sort of bang, but it is not clear that the banging sound is the first strike of a battering ram.  Accepting *arguendo* that this banging sound was the first strike of the battering ram, it occurs three to four seconds after the police began yelling, "State Police!  Search warrant!"

The district court did not find that the officers announced and waited six seconds, and we are not persuaded to accept the State's version of events. Even if we were to give the State the benefit of the doubt and were to conclude that the bang is the first strike of a battering ram, we reject the State's argument.  Given the extremely

short period of time between the beginning of yelling and the sound of a bang three to four seconds later, we conclude that the court's finding that the announcement of the search "appears to be simultaneous with entry into the home" accurately reflects the historical facts and is supported by substantial evidence. The belt tapes clearly establish that the officers did not knock and wait and, instead, announced while forcibly breaching the door.

After deferring to the court's factual findings, we review de novo whether the search and seizure was reasonable. *See Hand,* 2008-NMSC-014, ¶ 6. Building on its premise that the officers waited six seconds, the State contends that the officers fully complied with the knock-and-announce rule. However, we accept the findings made by the district court. Additionally, even if we were to accept the State's six-second waiting period, we would still conclude it is insufficient. *See State v. Gonzales*, 2009-NMCA-___, ¶¶ 18, 22, ___ N.M. ___, ___ P.3d ___ (No. 28,411, Dec. 21, 2009) (holding that an eight-second waiting period was insufficient).

Considering the findings made by the court, "[t]he ultimate question . . . is whether the [officers' course of conduct] was reasonable." *Johnson*, 2006-NMSC-049, ¶ 10. The district court concluded that it was not, and we agree. Unless there is exigency, our cases require knocking, announcing, and waiting a reasonable period of time. These are discrete and necessary requirements. *See id.* ¶ 12 ("Absent exigent

circumstances, officers must knock *and* announce their purpose and identity, *then wait a reasonable period of time* to determine if consent to enter will be given before forcefully entering." (emphasis added)); *Hand*, 2008-NMSC-014, ¶ 11 ("We accept the reasoning that an officer's perception of movement within the place to be searched, *after knocking and announcing*, is a significant component of the constructive refusal analysis." (emphasis added)). In this case, two of these requirements—knocking and waiting a reasonable period of time—are missing.

The State argues that the court misunderstood the law, claiming that the time the officers were announcing should be included in the relevant calculation, and there was no need for a "silent pause." We reject this argument. The appropriate measurement is the time period between knocking and announcing and when forcible entry begins. *See Johnson*, 2006-NMSC-049, ¶ 11 (relying on case law stating that the relevant time period is from announcement to when the officers hit the door with the battering ram). The time when the officers are using the battering ram does not count as waiting. *See id.* ("When the officers began hitting the door with the battering ram, they ceased 'knocking' and began 'entering.'"). The court applied precisely this analysis, found no appreciable time between announcement and forcible entry, and concluded that the officers' failure to knock and wait any time at all was unreasonable.

The State suggests that the small size of the house justified the officers' conduct. The State has not indicated how this argument was raised below, and we have not found it being made on the transcript of the suppression hearing or in the record. Consequently, it does not appear this argument was presented below. Even if it had been presented, we would reject it. In *Johnson*, the small nature of the hotel room justified a relatively short wait before the police forcibly entered. *Id.* ¶¶ 5, 15, 17 (holding that a ten-second knock-and-announce period was sufficient in light of the fact that the hotel room was so small it could be walked through in only a few steps). Attempting to bring this case within the holding in *Johnson*, the State characterizes this house as a "relatively small single story residence." However, this case is not like *Johnson*. The house is approximately 1640 square feet, and photographs indicate that it is a common residence. We disagree that it should be considered to be like the hotel room in *Johnson*.

## C.    Exigent Circumstances

Exigent circumstances will excuse compliance with the knock-and-announce requirement. *See id.* ¶ 10. "Whether exigent circumstances exist[] . . . is a mixed question of law and fact." *Lopez*, 2005-NMSC-018, ¶ 11. After deferring to the lower court's factual findings, we review the determination of exigent circumstances de novo. *Id.* We apply an objective test to determine whether "a reasonable, well-

8

trained, and prudent police officer would believe that full or partial compliance with the rule of announcement would create or enhance the danger to the . . . officers." *Id.* ¶ 12 (internal quotation marks and citation omitted). We consider the totality of the circumstances. *Id.* ¶ 16.

The State argues that exigent circumstances existed and, therefore, partial compliance would be sufficient. We disagree. The State's argument that it partially complied with the rule is premised on its interpretation that there was a six-second wait. We have rejected that premise. Additionally, we reject the State's argument that exigency existed. There is evidence that the officers had information that Defendant "possesse[d] firearms" and had "[p]ossible weapons in the residence." The officers' testimony at the suppression hearing clarified that these references were to a "handgun," and there is no evidence that the officers believed Defendant to have access to anything other than a handgun. At the time of the operation, the officers expected Defendant to be at home along with his wife and two young daughters. Defendant had no criminal record, and there was no evidence that he had a propensity toward violence.

With these facts in mind, we turn to the relevant analysis contained in *Attaway* and *Lopez*. *Attaway* found exigency where the defendant was a drug "dealer of substantial quantity," had a significant, violent criminal history, "had threatened

9

officers" in the past, and had a "large arsenal of weapons[,] including an automatic weapon, two sawed-off shotguns, a couple of rifles, and numerous handguns." 117 N.M. at 153, 870 P.2d at 115.

*Lopez*, on which the State relies, modified *Attaway*, stating that *Attaway* may have overstated the requirements for exigency. *Lopez* adopted a more flexible approach under which weapons combined with drug dealing can establish exigency. However, *Lopez* found exigency where the defendant was engaged in criminality other than drug dealing, selling stolen firearms, and had weapons consisting of "fully automatic Mini-14's and sawed-off shotguns." 2005-NMSC-018, ¶ 25 (internal quotation marks omitted). In addition, there were two to four people at the residence with access to these weapons. *Id.*

We recognize that *Lopez* modified the threshold to establish exigency set by *Attaway*, but we do not interpret it to hold that general allegations of drug dealing and possession of a handgun are sufficient to establish exigency. On the contrary, we read *Lopez* as requiring specific facts showing heightened danger. Here, the State referred to "weapons," but the officers' testimony clarified that, based on information from the informant, they believed Defendant had a handgun. There is no showing of a large number of weapons or that they were the unusually dangerous weapons like those in *Lopez*. Unlike *Lopez*, there is no showing that Defendant was engaged in criminality

10

other than drug dealing. In *Lopez*, there were two to four people in the residence with apparent access to the automatic weapons and sawed-off shotguns. *Id.* ¶ 25. By contrast, in this case, the occupants in the residence with Defendant were known to be his wife and two young daughters.

Nor are we persuaded by the State's argument that the possibility that drugs could be destroyed constitutes exigency. That concern is present in every case involving the execution of a search warrant in a drug investigation.

We cannot equate the State's showing in this case with that considered sufficient to establish exigency in *Lopez*. If we were to consider general allegations of a handgun and drug dealing sufficient to establish exigency, the exigency exception would swallow the knock-and-announce rule, and we would essentially read the rule out of existence. We do not mean to denigrate the danger to the officers when executing a search warrant, but we interpret exigency to require something more than a generic reference to drugs and a handgun, circumstances that will be present in virtually every case. *Attaway,* 117 N.M. at 149, 870 P.2d at 111 (noting that the officers' general knowledge about drug dealers "cannot constitutionally be a substitute for . . . whether circumstances exist in the *particular* case which allow an unannounced police entry." (internal quotation marks and citation omitted)). "Exceptions to the entry requirement must be founded on particularity and not on

generality." *Id.* at 152, 870 P.2d at 114 (internal quotation marks and citation omitted).

Finally, the State argues that exigency is supported by the fact that Defendant was a former correctional officer who had been trained in "official tactics." We are not persuaded. It is the State's burden to prove exigency. *See State v. Vargas*, 1996-NMCA-016, ¶ 6, 121 N.M. 316, 910 P.2d 950 (stating that in the knock-and-announce context, it is the state's burden to establish exigency). The State's reference to "official tactics" is vague and could cover a wide variety of law enforcement tactics. The only detail we are given is that Defendant was trained in hand-to-hand combat. It is not clear that this information was argued below, or whether this training is the same as the "official tactics" to which the State refers. In any event, we fail to see how hand-to-hand training, matched against a full compliment of heavily armed and trained officers entering through front and back doors, would make Defendant sufficiently dangerous to justify dispensing with the requirements of the knock-and-announce rule. The State argues that he had more knowledge in "official tactics than the average citizen," but it has not explained what this knowledge is, or how it actually presented an increased danger. The State mentions that he was team captain of the "(inaudible) team," but this unclear reference does not demonstrate exigency.

The concerns expressed by the State—the potential danger to officers, and the possibility that a suspect will try to dispose of drugs when he becomes aware that officers are at the door—are valid concerns. There are also countervailing considerations, such as "preventing needless destruction of private property, eliminating unnecessary intrusions upon privacy, and reducing the risk of violence to both police and occupants." *Attaway*, 117 N.M. at 150, 870 P.2d at 112. The knock-and-announce rule reflects an attempt to balance competing interests, *id.* at 151, 870 P.2d at 113, and "'is no mere procedural nicety or formality.'" *Id.* at 148, 870 P.2d at 110 (quoting *Ker v. California*, 374 U.S. 23, 49 (1963)). Our case law protects officers by requiring only a short time between announcing and forcible entry and, if sufficient danger can be demonstrated, that time may be reduced or eliminated. Still, we interpret our cases to require something more than generic concerns before non-compliance or partial compliance is excused. For the reasons we have discussed, we conclude the State has not met its burden to prove exigency.

**III.   CONCLUSION**

We therefore conclude that the factual findings are adequately supported, and the failure to comply with the knock-and-announce rule requires suppression. Accordingly, we affirm.

13

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**CELIA FOY CASTILLO, Judge**