Certiorari Denied, August 19, 2010, No. 32,511

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-084

Filing Date: July 8, 2010

Docket No. 28,179

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

KENNETH ULIBARRI,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY
Abigail P. Aragon, District Judge

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Joe M. Romero, Jr.
Albuquerque, NM

for Appellant

## OPINION

**CASTILLO, Judge.**

**{1}**     Defendant Kenneth Ulibarri was charged by information with six counts of criminal misconduct including trafficking of a controlled substance, possession of a controlled substance, and possession of drug paraphernalia. Defendant filed a motion to suppress the evidence obtained from the search of the home he shared with his grandfather, Joe Roybal (Mr. Roybal). Defendant asserted that his Fourth Amendment rights were violated when the officers forcibly entered the home without waiting a reasonable time after knocking and

1

announcing. The district court denied the motion. Defendant appeals, and we reverse.

## I.      BACKGROUND

**{2}**      At the hearing on Defendant's motion to suppress, four persons testified: three of the officers who executed the warrant and Mr. Roybal. A summary of the relevant testimony follows. Defendant, his girlfriend, and her mother were the targets of an undercover investigation into activities related to drug trafficking. The officers obtained a search warrant for the home. Mr. Roybal was seventy-nine years old at the time of the hearing and was neither a suspect of the investigation nor suspected of wrongdoing of any kind. Shortly after Defendant and his girlfriend were arrested, the officers executed the warrant. The lead officer was aware at the time of the search that neither Defendant nor any other individual targeted in the investigation was in the home and that only Defendant and Mr. Roybal lived there.

**{3}**      The search began at about 10:00 p.m. Eight officers were mobilized; four were stationed at the front door and four at the back. The officers knocked and announced their presence; they heard no reply of any sort from within. After waiting ten to twelve seconds, the lead entry officer ordered his team to break a window as a distraction and force entry using a battering ram. As the door swung inward, it hit Mr. Roybal, knocking him to the ground and causing him injuries.

**{4}**      Mr. Roybal testified that he was in his recliner watching TV when he heard a light knock on his door. He explained that he got up and approached the door when it suddenly came open and struck him on the head, rendering him temporarily unconscious. He estimated that it took him ten seconds or less to get from the recliner to the door. There was also testimony as to recorded conversations at the jail between Defendant and Mr. Roybal during which they discussed the time between the knock and announce and the forced entry.

**{5}**      In its order denying the motion, the district court adopted the State's proposed findings and conclusions. The findings adopted summarized the account of the testimony elicited at the suppression hearing: (1) the search was conducted pursuant to a valid warrant; (2) Defendant resided with Mr. Roybal; (3) two teams of officers assembled at each of the home's two entry ways; (4) numerous officers knocked and announced; (5) the entry team testified that they forced entry after waiting ten to twelve seconds; and (6) Mr. Roybal testified that the wait between the knock and entry was between five and ten seconds, but on cross examination he admitted that he had told Defendant during a tape-recorded conversation at the San Miguel County Detention Center that the time was between thirty seconds and a minute. In the adopted conclusions, the district court determined that "[u]nder the totality of the circumstances . . . , it was reasonable for the officers to believe that they were being denied entrance after at least ten to twelve seconds and as much as thirty seconds" after the knock and announce.

**{6}**      Following the denial of the motion, Defendant entered into a conditional plea and disposition agreement. He pled guilty to possession of cocaine and heroin, admitted to two prior felony convictions, and reserved his right to appeal the district court's denial of the

2

motion to suppress.

## II.    DISCUSSION

**{7}** When we review a court's denial of a motion to suppress, "[w]e view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "All reasonable inferences in support of the district court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (alterations omitted) (internal quotation marks and citation omitted). Whether a search or seizure is reasonable is a mixed question of fact and law because determinations of reasonableness require both factual determinations and reasoned judgment. *State v. Attaway*, 117 N.M. 141, 145-46, 870 P.2d 103, 107-08 (1994), *modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶ 8, 138 N.M. 9, 116 P.3d 80. We review those questions de novo. *Id.*; *Urioste*, 2002-NMSC-023, ¶ 6 (indicating that search and seizure issues and determinations of reasonable suspicion are mixed questions of fact and law that should be reviewed de novo).

**{8}** We first address the evidence supporting the district court's adopted finding and related conclusion that the officers waited "as much as thirty seconds" after the knock and announce. We observe that Mr. Roybal admitted on cross-examination that he had made this estimation during a taped conversation with Defendant at the jail, but on direct, he testified that the time period was between five and ten seconds. The officers testified that the relevant time period was between ten and twelve seconds. The State makes no argument that the thirty-second estimation should be used as evidence in this case and relies solely on the testimony of the officers that ten to twelve seconds elapsed between the knock and announce and forced entry. Accordingly, our analysis is based on a time period of between ten and twelve seconds as this time period is supported by substantial evidence.

**{9}** "In New Mexico, law enforcement officers are constitutionally required to knock and announce their identity and purpose, and wait a reasonable time to determine if consent to enter will be given prior to forcefully entering a [dwelling] in order to execute a search warrant." *State v. Johnson*, 2006-NMSC-049, ¶ 10, 140 N.M. 653, 146 P.3d 298 (alteration in original) (internal quotation marks and citation omitted). "The rule is part of the constitutional protections against unreasonable searches and seizures embodied in article II, section 10 of the New Mexico Constitution[] and the Fourth Amendment to the United States Constitution." *State v. Vargas* (*Vargas II*), 2008-NMSC-019, ¶ 11, 143 N.M. 692, 181 P.3d 684 (citations omitted). "A failure to comply with this requirement may result in a determination that the search was constitutionally unreasonable, and application of the exclusionary rule to any evidence seized as a result of such search." *State v. Vargas* (*Vargas I*), 1996-NMCA-016, ¶ 5, 121 N.M. 316, 910 P.2d 950 (filed 1995) (citation omitted).

**{10}** The knock-and-announce rule serves a number of purposes. It "prevents the needless destruction of property, eliminates unnecessary intrusions on privacy, and reduces the risk of violence to both occupants and police." *Id.* In addition, it protects "those elements of

3

privacy and dignity that can be destroyed by a sudden entrance" and gives "occupants the time necessary to collect themselves and to prepare for the entry of the police before answering the door." *Vargas II*, 2008-NMSC-019, ¶ 15 (internal quotation marks and citation omitted). "The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed." *Id.* (internal quotation marks and citation omitted). Yet another equally important purpose of the knock-and-announce rule is to "permit individuals an opportunity to comply with the law." *United States v. Gallegos*, 314 F.3d 456, 460 (10th Cir. 2002).

**{11}** "Refusal to consent to enter does not have to be explicit. Instead, [i]f the occupants do not admit the officers within a reasonable period of time . . . , the officers may be deemed to be constructively refused admittance, and they may then enter by force." *State v. Hand*, 2008-NMSC-014, ¶ 7, 143 N.M. 530, 178 P.3d 165 (alteration in original) (internal quotation marks and citation omitted). There are no bright line rules establishing how long law enforcement officers must reasonably wait to determine that they have been constructively refused admittance. *Id.* "Instead, in each case, we consider the totality of the circumstances to determine whether the officers' wait was reasonably long enough to infer that they were being denied consent to enter." *Id.* "[T]he central inquiry in conducting this determination is whether an objectively reasonable officer would believe that occupants of the residence had a reasonable opportunity to voluntarily admit the officer, thereby supporting a conclusion that the occupants refused admittance." *Gallegos*, 314 F.3d at 459.

**{12}** "We must determine whether the conduct of the police officers was reasonable in light of the facts known to them at the time they executed the warrant." *Attaway*, 117 N.M. at 147, 870 P.2d at 109. The burden is on the State to prove the officers acted reasonably. *See State v. Reynoso-Hernandez*, 2003 ME 19, ¶ 9, 816 A.2d 826 ("When a defendant challenges the execution of an otherwise valid warrant pursuant to the 'knock[-] and[-]announce' principles of the Fourth Amendment, the burden is on the [s]tate to show the reasonableness of the execution of the warrant."); *cf. State v. Ponce*, 2004-NMCA-137, ¶ 7, 136 N.M. 614, 103 P.3d 54 (stating that it is the state's burden, when confronted with a challenge to the constitutionality of a search or seizure, "to present testimony or other evidence showing that the arrest or search met constitutional muster").

**{13}** The State correctly observes that "if exigent circumstances exist, noncompliance with the knock-and-announce rule may be justified." *See Johnson*, 2006-NMSC-049, ¶ 12. However, this point of law is inapposite in this case. The State does not argue that the officers failed to comply with the knock-and-announce rule and that exigency justified their noncompliance. Rather, the State argues that the officers did comply with the knock-and-announce rule and that, under the totality of the circumstances, the officers reasonably concluded that they were denied entry after ten to twelve seconds. Accordingly, we do not consider the exigent circumstances exception in this case.

**{14}** We turn now to the facts which comprise the totality of the circumstances in this case. The warrant was executed at roughly 10:00 p.m. The officer leading the entry team was aware that neither Defendant nor any other person targeted in the investigation were at the home. It was further understood that Mr. Roybal, an elderly man, was the only other

4

person living at the home besides Defendant. The officers knocked and announced at the home, waited ten to twelve seconds during which they heard no response or any other noise from within, and forced entry. The lead entry officer testified that it was customary to wait ten seconds following a knock and announce before forcing entry.

{15}    The State argues that, "[g]enerally, a ten-second waiting period has been approved as reasonable when officers are attempting to execute a search warrant and have knocked and announced." Therefore, the State contends, "[w]hen there was no response after ten seconds, it was reasonable for the officers to conclude that the occupants were refusing entry[.]" Two recent New Mexico decisions regarding the knock-and-announce rule, *Hand* and *Johnson*, address factors used to decide that a waiting period of at least ten seconds is reasonable.

{16}    In *Hand* and *Johnson*, the officers executed the warrants in the early morning hours. *Hand*, 2008-NMSC-014, ¶ 3; *Johnson*, 2006-NMSC-049, ¶ 2. Neither defendant responded to the knock and announce. *Hand*, 2008-NMSC-014, ¶ 11; *Johnson*, 2006-NMSC-049, ¶ 15. In both cases, the dwellings at which the search warrants were executed—a motel room and a trailer—were quite small. *Hand*, 2008-NMSC-014, ¶ 9; *Johnson*, 2006-NMSC-049, ¶ 17. Given these facts, our Supreme Court held in both cases that the officers reasonably concluded that they were constructively refused admittance after waiting at least ten seconds without a response. *Hand*, 2008-NMSC-014, ¶ 13; *Johnson*, 2006-NMSC-049, ¶ 17.

{17}    The basic reasoning underlying *Hand* and *Johnson* appears to be that, as a general proposition, it should not take more than roughly ten seconds for an individual within a small dwelling to respond to an officer's request for entry. There was the additional fact in *Hand* that the officers heard the "[d]efendant moving back and forth within the trailer but never toward the door[.]" *Hand*, 2008-NMSC-014, ¶ 11. The Court in *Hand* held that this fact, in conjunction with the small size of the trailer, further justified the officers' belief that constructive refusal had been given by at least the ten-second point in time. *Id.*

{18}    In our view, the present case is distinguishable from *Hand* and *Johnson*. Here the warrant was executed at roughly 10:00 p.m. The home is not small like a motel room or a trailer; it is a house with two entrances and separate rooms. It was understood that Defendant and the other suspects were not in the home when the search warrant was executed and that Defendant resided with Mr. Roybal. Accordingly, we conclude that the ten- to twelve-second period of silence which followed the knock and announce in the present matter cannot be measured in the same context as was the period of silence which followed the knock and announce in *Hand* and *Johnson*. Therefore, the fact that a ten-second waiting period was deemed reasonable in those cases is not determinative here.

{19}    In our view, an objectively reasonable officer would consider the time at which the search warrant is executed, the identity of the occupants likely to be within the dwelling at the time of the search, and the size of the dwelling to be searched in assessing whether a period of nonresponsiveness following a knock and announce signals constructive refusal. No evidence was presented that the officers considered any of these facts. Rather, the findings indicate that the officers relied on the ten to twelve seconds of silence following the

5

knock and announce, in and of itself, as the basis for their conclusion that they had been constructively refused admittance. Indeed, the lead officer testified that forcing entry after waiting ten seconds following a knock and announce is a "customary" practice. Such a practice not only violates a clear tenet of our case law that there are no bright line rules as to how long an officer must wait before inferring constructive refusal but, in this case, caused exactly the type of harms the knock-and-announce rule is designed to prevent: Roybal's home was needlessly damaged; Roybal was unnecessarily injured; and the limited duration of time between the knock and announce and forced entry interfered with Roybal's attempts to comply with the officers' requests for admission.

{20} The State cites certain generalized conditions which, in its view, explain the officers' decision to wait only ten to twelve seconds. The State argues that the home was being used for drug trafficking, that the officers could not know who was in the home, and that the officers were assuring their own safety by quickly forcing entry. The adopted findings do not mention these facts and the officers executing the entry did not testify that their decision to wait only ten to twelve seconds before forcing entry was premised on such concerns.

**CONCLUSION**

{21} The burden is on the State to prove that, under the totality of the circumstances in this case, a wait of ten to twelve seconds was sufficient for the officers to conclude that they were constructively refused entry and, therefore, entitled to enter by force. We view the facts found by the district court in the light most favorable to the State, but we find them insufficient to support a conclusion that the wait of ten to twelve seconds was reasonable in this case. Thus, we conclude that the knock-and-announce rule was violated. We reverse the district court's denial of Defendant's motion to suppress evidence, vacate Defendant's plea, and remand to the district court for further proceedings consistent with this opinion.

{22} **IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for _State v. Ulibarri_, Docket No. 28,179**

| AE | APPEAL AND ERROR |
|---|---|
| AE-SR | Standard of Review |

6

**CT**                **CONSTITUTIONAL LAW**
CT-FA          Fourth Amendment
CT-SU         Suppression of Evidence

**CA**                **CRIMINAL PROCEDURE**
CA-MR        Motion to Suppress
CA-SZ         Search and Seizure
CA-SW       Search Warrant