IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMCA-032

Filing Date: January 22, 2013

Docket No. 31,179

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

PEBBLES JEAN-PAUL,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Stephen K. Quinn, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Margaret McLean, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

WECHSLER, Judge.

{1}    Absent various exceptions, Article II, Section 10 of the New Mexico Constitution requires officers executing a warrant at a premises to knock and announce their presence and authority and then wait a reasonable time to permit those inside to voluntarily open the door. Police executing a search warrant at Defendant Pebbles Jean-Paul's home knocked and announced their presence and authority, waited one second, and when they received no response, forcibly entered her home with a battering ram. They believed that this short wait

1

was authorized by the fact that a man had been standing near the window, looking out in the direction of the police as they approached the home and had moved away from that position as the police reached the door. We conclude that the mere one-second wait was not justified by either the exigent circumstances exception or the futility exception to the knock-and-announce requirement. Additionally, the one-second wait was simply too short to permit the occupants either to answer the door or from which to infer that they had refused to voluntarily admit the police. Accordingly, we reverse the district court's denial of Defendant's motion to suppress.

## BACKGROUND

**{2}** On September 22, 2009, several officers went to Defendant's home in order to execute a search warrant for controlled substances. The officers parked away from the home and approached it from an inconspicuous direction. As the officers approached, they observed someone in the residence, later identified as Michael Dickson, approximately three to five feet from the window, facing out. The officers were approximately eight feet from the window at that point, but they could not say that Dickson made eye contact with them or that he actually saw them. Dickson was approximately five to six feet from the front door of the residence. An officer described Dickson as being "seen" at the window and then "not seen," but the officer did not state that Dickson ran or hid, only that the officer no longer saw him. The officers knocked on the door and announced "Police department; search warrant!" The officers' belt tape recorded the fact that approximately four seconds after the officers began knocking, and approximately one second after the officers completed the phrase "search warrant," the officers struck the door with a battering ram. Once inside, the officers found drugs and drug paraphernalia.

**{3}** Defendant was charged with drug trafficking by distribution and possession of drug paraphernalia. She moved to suppress the evidence obtained during the execution of the search warrant, arguing that by waiting such a short period before forcibly entering, the officers did not comply with the constitutional requirement that they knock and announce their presence and authority and then wait a reasonable time for an answer prior to forcibly entering the premises and that no exceptions existed that would have permitted the police to dispense with the requirement. The district court denied the motion, and Defendant entered into a conditional plea agreement under which she pleaded guilty to the trafficking charge, reserving her right to appeal the denial of her motion to suppress.

## STANDARD OF REVIEW

**{4}** Defendant contends that the district court erred by denying her motion to suppress the evidence obtained during the execution of the warrant. We review the district court's suppression ruling to determine "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Hand*, 2008-NMSC-014, ¶ 6, 143 N.M. 530, 178 P.3d 165 (internal quotation marks and citation omitted). We defer to the district court's factual findings so long as they are supported by substantial evidence.

2

*Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Gonzales*, 2010-NMCA-023, ¶ 4, 147 N.M. 735, 228 P.3d 519 (alterations, internal quotation marks, and citation omitted). After deferring to the district court's factual findings, we review de novo the constitutional question of whether the search was reasonable. *Id.* In the district court, it was the State's burden to demonstrate the reasonableness of the execution of the search warrant. *State v. Ulibarri*, 2010-NMCA-084, ¶ 12, 148 N.M. 576, 240 P.3d 1050, *cert. denied*, 2010-NMCERT-008, 148 N.M. 942, 242 P.3d 1288.

## INTERSTITIAL APPROACH

**{5}** Defendant's motion was brought pursuant to both the federal and state constitutions and, on appeal, her arguments rely on both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Article II, Section 10 provides that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures" and is an analogue of the Fourth Amendment. "While the federal constitution provides a minimum level of protection below which the states may not descend, states remain free to provide greater protection." *State v. Javier M.*, 2001-NMSC-030, ¶ 24, 131 N.M. 1, 33 P.3d 1 (alteration, internal quotation marks, and citation omitted)). Under New Mexico's interstitial approach to state constitutional interpretation, this Court should only reach the state constitutional question if the federal constitution does not provide the protection sought by the party raising the issue. *See State v. Gomez*, 1997-NMSC-006, ¶¶ 19-20, 122 N.M. 777, 932 P.2d 1. When applying the interstitial approach, "the court asks first whether the right being asserted is protected under the federal constitution." *Id.* ¶ 19. "If it is, then the state constitutional claim is not reached." *Id.* "If it is not, then the state constitution is examined." *Id.* We must therefore decide whether the federal constitution would offer Defendant any protection in this case prior to reaching her claim under the state constitution.

**{6}** In the absence of certain exceptions, the Fourth Amendment requires police who are executing a warrant to announce their presence and authority and to wait a reasonable time for an occupant to answer before entering the premises. *Wilson v. Arkansas*, 514 U.S. 927, 931-36 (1995). This rule, commonly called the knock-and-announce rule, is also a requirement of Article II, Section 10 of the New Mexico Constitution. *State v. Attaway*, 117 N.M. 141, 149-50, 870 P.2d 103, 111-12 (1994). But while both the federal and state constitutions include the knock-and-announce requirement, the remedies for a violation under the two constitutions are not the same. In *Hudson v. Michigan*, 547 U.S. 586, 591-94 (2006), the Supreme Court held that if the police fail to adhere to the knock-and-announce rule, the Fourth Amendment does not require suppression of any evidence obtained during the search as a remedy for the violation. *Hudson* reasoned that "but for" causation is a necessary condition for suppression and that a violation of the knock-and-announce rule does not cause the discovery of evidence, since regardless of the manner of the officers' entry, the evidence would inevitably be discovered during the subsequent search, and the search itself would be valid pursuant to the warrant. *Id.* at 592. *Hudson* also determined that the

3

beneficial effects of exclusion are outweighed by its social costs when it comes to knock-and-announce violations because of the potential for increased violence against officers who might be hesitant to enter unannounced if they believed that evidence might be suppressed and the potential for the destruction of evidence by those inside the residence. *Id.* at 595.

**{7}** In contrast, *Attaway* states that suppression is the appropriate remedy under Article II, Section 10 of the New Mexico Constitution for the failure to follow the knock-and-announce rule. *Attaway*, 117 N.M. at 150 n.6, 870 P.2d at 112 n.6. *Attaway* was decided prior to *Hudson* and did not appear to consider the policy considerations addressed in *Hudson* in support of the conclusion that suppression is not an appropriate remedy. Our Supreme Court has not had the occasion since *Hudson* to reconsider *Attaway* or the application of the exclusionary rule for knock-and-announce violations under the state constitution. *See Hand*, 2008-NMSC-014, ¶ 5 n.2 (stating that "[b]ecause neither party briefed the effect of *Hudson* on New Mexico's knock-and-announce jurisprudence and because we conclude that the district court erroneously suppressed the evidence, we leave the question of *Hudson*'s effect to be decided another day"). Therefore, *Attaway* controls, and the remedy for any violation of Article II, Section 10's knock-and-announce requirement continues to be suppression of the evidence.

**{8}** Although *Gomez*'s discussion of the interstitial analysis applied to the interpretation of the rights afforded under the federal and state constitutions, as opposed to the remedies, we believe its analysis is equally applicable to instances such as this one, in which, even if the rights provided under the two constitutions were the same, the remedy for a violation of those rights can be different. *See Gomez*, 1997-NMSC-006, ¶ 20 (citing as an example of the interstitial approach *State v. Gutierrez*, 116 N.M. 431, 446-47, 863 P.2d 1052, 1067-68 (1993), which declined to incorporate the federal good-faith exception to the exclusionary rule into the state constitution because refusing to apply the remedy of the exclusionary rule would undermine the purpose of the state constitutional protection against unreasonable searches and seizures). Because any violation of Defendant's rights under the United States Constitution would not provide her with a remedy in this proceeding, we need not decide whether the police conduct violated Defendant's Fourth Amendment rights. *See Gomez*, 1997-NMSC-006, ¶¶ 19-20. Therefore, we assess Defendant's claim only in light of the protections provided by Article II, Section 10 of the state constitution.

**KNOCK AND ANNOUNCE UNDER ARTICLE II, SECTION 10**

**{9}** In New Mexico, "[l]aw enforcement officers executing a search or arrest warrant are constitutionally required to knock and announce their identity and purpose and then wait a reasonable time to determine if consent to enter will be given, prior to forcefully entering a dwelling." *Gonzales*, 2010-NMCA-023, ¶ 5. The rule "requires that officers make known not only their presence, but also their authority under the warrant that they are serving." *State v. Vargas*, 2008-NMSC-019, ¶ 18, 143 N.M. 692, 181 P.3d 684. By requiring the police to announce the fact that they have a warrant and then give the occupants time to voluntarily answer the door, the knock-and-announce rule protects "those elements of

4

privacy and dignity that can be destroyed by a sudden entrance" and gives "occupants the time necessary to collect themselves and to prepare for the entry of the police before answering the door." *Id.* ¶ 15 (internal quotation marks and citation omitted). The rule serves a number of additional purposes, including preventing the needless destruction of property, reducing the risk of violence to both occupants and police, and permitting an opportunity for the occupants to comply with the law. *Ulibarri*, 2010-NMCA-084, ¶ 10.

**{10}** Courts have carved out various exceptions to the rule, and of these, two that are relevant here are that police need not comply with the knock-and-announce requirement in situations in which knocking and announcing the officers' presence and authority would be futile in that it would amount to nothing more than a useless gesture, *see Vargas*, 2008-NMSC-019, ¶ 11, and when there are exigent circumstances militating against such an announcement. *See also Ulibarri,* 2010-NMCA-084, ¶ 13. The futility exception applies when it is clear that the authority and purpose of the police are already known to those within the premises, such that knocking and announcing that the police intend to execute a warrant would serve no purpose. *See Vargas*, 2008-NMSC-019, ¶¶ 3, 17 (holding that the futility exception applied when the occupant of a home opened the door, saw the police, exclaimed "Oh, shit!," and attempted to close the door). Exigent circumstances include situations involving, among other things, "a demonstrable risk that evidence will be destroyed while the officers wait to be denied entry, or specific information . . . indicating that the danger to the officers executing the warrant will be increased, rather than decreased, if the officers comply with the rule." *State v. Vargas*, 1996-NMCA-016, ¶ 5, 121 N.M. 316, 910 P.2d 950.

**{11}** To determine whether an exception applies, a court must look to the totality of the circumstances "at the time of entry from the point of view of a reasonable, well-trained, and prudent police officer" to decide whether the officer had a reasonable belief that there were exigent circumstances or that knocking and announcing would be futile. *Vargas*, 2008-NMSC-019, ¶ 12. The reasonableness of an officer's belief is measured under a reasonable suspicion standard, "which is not high" but which "requires specific, articulable facts, together with reasonable inferences therefrom, as a basis for concluding that the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Id.* (alteration, internal quotation marks, and citation omitted).

## FUTILITY AND EXIGENT CIRCUMSTANCES

**{12}** The district court determined that the knock-and-announce requirement was excused because of both the futility and exigent circumstances exceptions. The basis of the district court's conclusion that the officers were not required to knock and announce their presence was that it was highly probable that Dickson had seen the officers approaching the house such that it would have been "futile to require a prolonged delay which could result in disposing of evidence." At the suppression hearing, an officer testified that it is standard operating procedure for police to expedite the process of entering a home when they have been seen by someone inside due to the possibility that the home's occupants could destroy

evidence or get a weapon. But the mere fact that officers have been observed by a home's occupants does not relieve them of the knock-and-announce requirement. *See State v. Williams*, 114 N.M. 485, 487-89, 840 P.2d 1251, 1253-55 (Ct. App. 1992) (applying the knock-and-announce rule despite the fact that the occupants of a home made eye contact with members of a SWAT team as they approached the house); *cf. State v. Reynaga*, 2000-NMCA-053, ¶ 12, 129 N.M. 257, 5 P.3d 579 (stating that "[w]e disagree with the [s]tate's argument that the knock-and-announce requirement serves no purpose once someone inside a . . . home is alerted to the presence of police" and holding that the knock-and-announce requirement applies even when the door has already been opened due to a ruse by police). Such a rule would require every person—whether guest or resident—who sees officers approaching a home to immediately go to the door and open it in order to avoid a forcible entry. People are not generally required to throw open their door to the police, and it is the announcement of the fact that the police have authority to enter pursuant to a warrant that alerts a person that it is lawful for the police to enter a premises regardless of the occupants' wishes. *See Commonweath v. Carlton*, 701 A.2d 143, 147 (Pa. 1997) ("[T]here is no requirement that anyone open the door to their dwelling in the absence of police statement of their authority and purpose. In a free society, the mere presence of police does not require an individual to throw open the doors to his house and cower submissively before the uniformed authority of the state."). Until the police announce that they have a warrant, the occupants have no reason to believe that the police may forcibly enter and thus no reason to believe that they must answer the door if they wish to avoid a forcible breach.

**{13}** Relying on *Vargas*, 2008-NMSC-019, the State contends that our Supreme Court has dispensed with the knock-and-announce requirement when the presence of officers is known. However, *Vargas* is not on point. *Vargas* held that knocking and announcing would have been futile when the defendant happened to open the door just as the officers reached it, saw the officers, said "Oh shit!," and attempted to close the door—all before the officers were able to knock and announce. *Id.* ¶¶ 3-4, 17. In *Vargas*, a reasonable officer could have concluded that the defendant knew that the officers were there for some type of investigation involving him or the house since the defendant uttered an exclamation that suggested an awareness and dissatisfaction with having been caught doing something illegal. The defendant then affirmatively engaged in conduct that sought to prevent the officers from entering when he attempted to shut the door, thereby indicating that he likely would not voluntarily open the door if the officers were to then knock and announce their presence and authority. *Vargas* simply holds that the futility exception applies under circumstances in which it is reasonable to believe that the occupant of a home knows the identity of the officers and their purpose for being at the premises and nevertheless affirmatively refuses to permit the officers to enter.

**{14}** *Vargas* is consistent with authorities from other jurisdictions that hold that an affirmative act by an occupant of a premises demonstrating refusal to admit police or an attempt to escape after becoming aware of their identity and purpose renders futile any further efforts by the police to knock and announce. *See, e.g.*, *United States v. Peterson*, 353 F.3d 1045, 1049 (9th Cir. 2003) (holding that the futility exception applied when, just as a

SWAT team was about to announce its presence, the defendant opened the door, saw the SWAT team, and attempted to deny them entry); *United States v. McGee*, 280 F.3d 803, 806-07 (7th Cir. 2002) (holding that the "useless gesture" exception applied when the occupant of a home had run out of the back door as the police began to knock and announce). *Vargas* does not abrogate *Williams* or otherwise sweepingly dispense with the knock-and-announce requirement any time an occupant of a premises knows that the police are outside.

**{15}** The State relies on two other cases involving affirmative acts of refusal for the proposition that other courts have found that knocking and announcing is not required when the occupants of a premises have seen the police outside. In *Richards v. Wisconsin*, 520 U.S. 385, 388 (1997), an officer disguised as a maintenance man knocked on the defendant's motel room door. The defendant cracked open the door, saw a uniformed officer standing behind the disguised officer, and slammed the door closed. *Id.* The officers then waited two or three seconds and, without announcing that they were there under the authority of a warrant, began ramming the door in order to gain entry into the room. *Id.* In *State v. Ochadleus*, 2005 MT 88, ¶ 12, 326 Mont. 441,110 P.3d 448, officers executing a warrant at a residence made eye contact with a man inside. They announced that they were police and that they had a search warrant, and they ordered the man to open the door. *Id.* The man first walked toward the door as if to open it, but when the officers again called out that they were the police, the man began backing away. *Id.* As soon as the man backed away, the police used a battering ram to enter the residence. *Id.* Although we need not decide whether the particular facts of *Richards* or *Ochadleus* would support an exception to the knock-and-announce rule under the New Mexico Constitution, both *Richards* and *Ochadleus* are consistent with the principle that some affirmative act by an occupant demonstrating a refusal to admit the police after their presence and purpose are known renders unnecessary any further act of knocking and announcing. These cases do not support the proposition that officers need not knock and announce their presence and authority and then wait a reasonable time to permit the occupants to respond any time an occupant has merely viewed the officers approaching from outside the area to be searched.

**{16}** The State also relies on the unreported federal district court decision of *United States v. Shaw*, No. 02-4008101/03-SAC, 2002 WL 31926894 (D. Kan. Nov. 22, 2002), *modified on rehearing* Nos. 02-40081-01-SAC, 02-40081-03-SAC, 2003 WL 356066 (D. Kan. Jan. 23, 2003). In that case, an officer in plain clothes knocked on the door of the residence to be searched, hoping that the occupants would answer voluntarily, without knowing that the person knocking was a police officer. *Id.* at *1. If the occupants did so, several uniformed officers were to announce that they were police with a search warrant and then enter the residence. *Id.* However, as the first officer approached the door, he realized that it was open and that there was a woman standing approximately two feet from him on the other side of the doorway. *Id.* She turned and looked at him, making eye contact. *Id.* The plain-clothed officer opened the door without knocking and announcing. *Id.* Approximately one second later, the uniformed officers following behind him announced that they were the police and that they had a warrant and then entered. *Id.* The federal district court for the district of Kansas upheld the search under the futility exception, finding that due to the position of the

uniformed officers behind the first officer, it was reasonable for the officers to conclude that the woman had seen the uniformed officers and that she knew that they were there by authority of a warrant. *Id.* at *3.

**{17}** We are not persuaded by *Shaw*'s reasoning. The fact that a person has observed police outside the door of a home does not, in the absence of other evidence, lead to a reasonable belief that the person knows that the police have a warrant that permits them to enter. Moreover, the State fails to point out that *Shaw* was later modified on rehearing for this very reason: On rehearing, the district court stated that "[e]ven if [the woman in the doorway] recognized [the first officer] or the officer beside him on the porch as police officers, her recognition would not have justified their reasonable belief that she actually knew of the reason for their presence." *Id.* For its conclusion that it was not reasonable to believe that the woman would have known that the police were there to execute a search warrant, the court relied on the facts that the woman was not arrested for any crimes related to the evidence discovered at the house and that she was not shown to have any knowledge of the events that caused the warrant to be issued. *Id.* However, this inquiry seems to look to information that the police would not necessarily have at the time of the entry, such as whether the woman who the officers saw in the doorway would be arrested during the search and whether she was someone who had any involvement with the illegal activity. *See Vargas*, 2008-NMSC-019, ¶ 12 (stating that the reasonableness inquiry looks at the information known to officers at the time of entry). Unless the police have information at the time of the entry that leads to a reasonable belief that the person who has observed them knows both that they are officers and that they have authority to enter pursuant to a warrant, the futility exception does not apply. The fact that someone has simply seen the police does not generally provide a factual basis for a reasonable suspicion that the occupant knows that the officers have authority to enter pursuant to a warrant. *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.8(f), at 693 (4th ed. 2004 & Supp. 2011) (stating that "there is no good reason for concluding, as some courts have done, that the occupants are aware of the authority *and* purpose merely because the police knew that someone within had seen them approaching or that someone outside had shouted something into the premises"). *Shaw* does not support the State's claim.

**{18}** The State also contends that the futility exception applies because Dickson knew of the police officers' presence. Again, however, it is not sufficient that occupants know of the police's presence; they must also know of the police's purpose and authority for being there. We recognize that in this case the officers could have reasonably believed that what Dickson saw when he was facing the direction of the window was six uniformed officers carrying a battering ram and approaching the house. While these facts might come closer to providing a reasonable suspicion that Dickson knew that the officers were there to execute a warrant than those cases in which the occupant of a home simply sees an officer outside of the door, we nevertheless conclude that these facts do not support a reasonable suspicion that Dickson knew that the officers were there to search the home pursuant to a warrant. This is not a case in which occupants of a home engaged in any conduct evincing a consciousness of guilt or some other action that would demonstrate that they knew why the police were there.

**{19}**     Furthermore, even if these facts did give rise to such a reasonable suspicion, we would nevertheless conclude that the futility exception does not apply.  New Mexico has only applied the exception when there has been an affirmative act of refusal by an occupant of the premises because such action more clearly  demonstrates that an occupant does not intend to voluntarily permit the police to enter than does a mere brief period of inaction.  *See Vargas*, 2008-NMSC-019, ¶ 14.  Other courts have also primarily applied the exception when there has been some affirmative act of refusal or other effort to avoid the execution of the warrant.  *See, e.g.*, *McGee*, 280 F.3d at 806-07 (stating that "[i]n general, the 'useless gesture' exception to the 'knock[-]and[-]announce' rule is applied when a suspect affirmatively refuses to answer his door to allow the government to serve a valid search warrant" but that it will also apply if someone is seen to have fled the premises); *United States v. James*, 764 F.2d 885, 888 (D.C. Cir. 1985) (holding that the futility exception excused the officers' failure to announce that they had a search warrant when, after knocking and calling out that they were the police, the officers heard the defendant running down the back stairs); *People v. Williams*, 499 N.W.2d 404, 408-09 (Mich. Ct. App. 1993) (upholding an almost instantaneous forcible entry after officers saw someone watching them as they approached the residence and then saw people running toward the back of the house as the police announced their presence and authority).  Dickson's act of being "seen" and then "not seen" is too ambiguous to constitute an act, such as fleeing, that would indicate that he was aware that the police were there to execute a warrant and that he sought to thwart that intent in some way.  We are not persuaded that the application of the futility exception any time an occupant presumably has seen the police properly supports the purposes of the knock-and-announce rule because it does not account for the fact that until the occupants are informed that the officers are there to execute a warrant, they have no reason to believe that they are required to answer the door, speak with officers, or permit the officers to enter.  Applying the exception under these circumstances would undermine two of the primary purposes of the knock-and-announce rule:  to prevent the needless destruction of property and to protect the sanctity and privacy of the home.

**{20}**     Because there was no evidence presented that demonstrated that the occupants of Defendant's home were already aware of the police's purpose in coming to Defendant's home and there was no evidence from which the officers could reasonably conclude that the occupants would have sought to thwart or avoid the police's lawful entry to search, the futility exception did not excuse the knock-and-announce requirement.

**{21}**     The fact that Dickson was in a position from which the police could reasonably suspect that he had seen them also did not create the kind of exigent circumstances that would excuse the knock-and-announce requirement based on a suspicion that evidence would be destroyed.  Although many drug investigations arguably involve the possibility of the destruction of evidence, the United States Supreme Court has refused to permit a blanket exception to the knock-and-announce rule for cases involving illegal drugs.  *See Richards*, 520 U.S. at 391-94.  The mere possibility that an occupant might destroy evidence does not give rise to an exigency.  *Ortega*, 117 N.M. at 162, 870 P.2d at 124.  Instead, circumstances must be such that a cautious, prudent, and well-trained officer would have a "reasonable

belief that evidence is being or is about to be destroyed." *Id.*

**{22}** A number of the New Mexico cases concluding that exigent circumstances excused the knock-and-announce rule when a warrant was for drugs rely on the possibility of an increased danger to officers. *See, e.g.*, *State v. Lopez*, 2005-NMSC-018, ¶ 25, 138 N.M. 9, 116 P.3d 80 (upholding a finding of exigent circumstances based on a reasonable suspicion of increased danger to officers when the officers had information that there were two to four people in the residence with access to multiple firearms including automatic weapons and that one of the residents was a drug dealer); *Vargas*, 1996-NMCA-016, ¶¶ 9, 13 (upholding a finding of exigent circumstances based on a reasonable suspicion of increased danger to officers when the officers had information that the defendants were involved in dealing drugs, that both were gang members and carried weapons, that one of the defendants had threatened police, and that during numerous police dispatches to the defendants' residence over the prior ten years, the defendants and other residents had a propensity to behave violently and to challenge the police); *Attaway*, 117 N.M. at 153, 870 P.2d at 115 (upholding a finding of exigent circumstances based on a reasonable suspicion of increased danger to officers when the officers had information that the defendant was a drug user and dealer, that he had previously been convicted of weapons and drug charges, that he possessed a large arsenal of weapons, including an automatic weapon and a number of other guns, and he in the past had threatened police officers); *cf. Williams*, 114 N.M. at 488-89, 840 P.2d at 1254-55 (affirming the district court's finding of no exigent circumstances based on increased danger to officers because although the officers believed that the occupants were drug dealers and that drug dealers are generally armed, "there was no evidence at the time of execution of the search warrant indicating that anyone threatened the officers or that they were placed in fear by persons either inside or outside the residence"). In this case, however, the district court did not find that the officers had a reasonable suspicion that there would be an increased danger to officers if they announced their presence and purpose, and, although the State preserved the argument in the district court, it does not put forth an argument on appeal that the district court's ruling could be affirmed on this basis. Accordingly, we do not consider whether the officers had a reasonable suspicion of increased danger and look only to whether there was reasonable suspicion that the occupants of Defendant's home would destroy evidence. *See In re Doe*, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (stating that an appellate court should not reach issues that the parties have not raised in their briefs).

**{23}** We have found only two New Mexico cases holding that exigent circumstances excused the knock-and-announce requirement based wholly on a destruction-of-evidence rationale. The most recent is *Ortega*. There, an officer received information that the defendant was supplying heroin to a man with whom he lived and that the man was selling the heroin to others. *Ortega*, 117 N.M. at 161, 870 P.2d at 123. The informant told officers that the defendant and his housemate would destroy the evidence if they knew that the police were coming. *Id.* The officer verified this information through other informants. *Id.* at 161-62, 870 P.2d at 123-24. When the officer went to execute the warrant, some children outside the home started yelling "Cops! Cops!" *Id.* at 162, 870 P.2d at 124. One child ran into the house, and the officer followed, without stopping to announce his presence or the fact that

10

he was there to execute a search warrant. *Id.* In upholding the validity of the entry, the New Mexico Supreme Court "place[d] little stock in [the officer's] fourteen years of experience and general knowledge regarding the destruction of narcotics." *Id.* at 163, 870 P.2d at 125. Instead, the Court relied on the fact that "it was objectively reasonable for [the officer] to believe evidence would be destroyed because he had information to that effect from three different informants who had been in contact with [the defendant] to support that belief." *Id.* Therefore, once the children alerted the occupants of the home to the presence of the police, the police were justified in entering immediately in order to prevent the destruction of evidence. *Id.*

{24} In *State v. Sanchez*, 88 N.M. 402, 404, 540 P.2d 1291, 1293 (1975), *overruled in part on other grounds by Attaway*, 117 N.M. 141, 870 P.2d 103, the district court found that the officers reasonably believed that drugs would be destroyed because an informant had specifically told the officers that the occupants of the home would flush the heroin down the toilet if the officers did not move quickly, and, as the officers approached the home, people inside were moving around and yelling as if they might have been alerted to the presence of the police and were attempting to take action in response.

{25} In this case, in contrast to *Ortega* and *Sanchez*, there was no testimony regarding any specific evidence that police had for believing that evidence was being or would be destroyed. Any suspicion the police might have had about the possibility that evidence would be destroyed was not based on information about Defendant or her home and instead would have been based solely on the officers' general experience. Such a generalized suspicion would arise in every case involving drugs—a result that is not permitted by *Richards* and *Ortega*. *See State v. Cohen*, 957 P.2d 1014, 1016 (Ariz. Ct. App. 1998) (holding that the exigent circumstances exception did not apply when officers executing a warrant for drugs made eye contact with occupants of a home, and entered approximately one second after knocking and announcing, since there was no reasonable suspicion that a longer wait would have increased the danger to officers or resulted in the destruction of evidence; any suspicions the officers had were not based on the particular facts of the case).

{26} The State argues that the fact that Dickson was seen by the police in the window and then not seen provides a reasonable suspicion that either he or Defendant was destroying evidence. Although the record is somewhat ambiguous as to when Dickson was seen and not seen, if his movement away from the window occurred prior to the officers' announcement of their presence and purpose, we cannot reasonably conclude that the fact that someone moves about a residence knowing that the police are outside, but not knowing that they are there to execute a warrant, gives rise to the inference that he is destroying evidence. *See Syakhasone v. State*, 39 S.W.3d 5, 10-11 (Ark. Ct. App. 2001) (holding that there were no exigent circumstances excusing the knock-and-announce requirement when, as the officers approached the house to execute a warrant for drugs, the officers saw someone open a curtain, look in the officers' direction, and then pull the curtain back; any concerns about safety and the destruction of drugs were not based on anything particular to

11

the defendant's case). Furthermore, to the degree that Dickson moved away from the window at the same time that the officers knocked and announced, his mere movement within the home does not give rise to a reasonable suspicion that he was destroying evidence. *See Commonwealth v. DeMichel*, 277 A.2d 159, 164 (Pa. 1971) (holding that there were no exigent circumstances excusing the knock-and-announce requirement when officers who went to a house to execute a warrant for illegal lottery tickets that could be readily destroyed announced their presence to someone peering through the blinds, and the person then dropped the blinds and did not open the door after a period of between five and twenty seconds; the officers' concern about the destruction of the lottery tickets was based on the fact that they could easily be destroyed, not on any particular facts demonstrating that they would be). This is not a case in which the officers saw Dickson running or taking other action that would suggest a frantic response to the presence of the police and that would therefore provide a reasonable suspicion that evidence was being destroyed. *Cf. Laffitte v. State*, 370 So. 2d 1108, 1108-10 (Ala. Crim. App. 1979) (upholding an almost immediate entry after police announced their presence and authority because, as they came to the door, police saw three people in the living room, one of whom grabbed some marijuana that had been lying there, and the three ran toward the back of the house); *State v. Kofoed*, 208 P.3d 278, 279-81 (Idaho 2009) (finding exigent circumstances based on the possible destruction of evidence when, as the police knocked and announced their presence and authority, they heard someone drop or kick something and then footsteps moving rapidly away from the door); *State v. Kelley*, 658 N.W.2d 279, 284, 289 (Neb. 2003) (finding exigent circumstances in part based on the possible destruction of evidence when, after a woman looked out of the window at the police as they knocked and announced, she looked "surprised" and left in a manner that appeared to be running, and then "a loud commotion" was heard inside). Because the State failed to demonstrate that the officers had a particularized reasonable suspicion that someone in Defendant's home was destroying evidence after Dickson saw the police, it was error to apply the exigent circumstances exception to the knock-and-announce requirement.

**REASONABLENESS OF KNOCK AND ANNOUNCE**

**{27}** Although there was no exception excusing the knock-and-announce requirement altogether, the police in this case did in fact announce their presence and purpose prior to forcibly breaching the door. Therefore, the State contends that this Court can affirm the district court under a right-for-any-reason rationale because the officers complied with the constitutional rule. *See Gallegos*, 2007-NMSC-007, ¶ 26 ("[W]e will affirm the [district] court's decision if it was right for any reason so long as it is not unfair to the appellant for us to do so."). The State asserts that the brief time between the announcement of the officers' presence and purpose and the forcible breach of the door was reasonable because the officers were constructively refused admittance.

**{28}** In order to comply with the knock-and-announce rule, police must announce their presence and purpose and receive an actual refusal from those inside or wait out the time necessary to infer a constructive refusal prior to forcibly entering. *Lopez*, 2005-NMSC-018,

¶ 27. The time that officers must reasonably wait before inferring that the occupants have refused to answer the door is not fixed and instead depends on the totality of the circumstances. *See Hand*, 2008-NMSC-014, ¶ 7. Relevant circumstances include the size of the premises that the occupants would have to traverse in order to come to the door; the time of day, which might impact whether occupants were likely to be asleep or awake and whether they might need to dress; and whether the police know that an occupant is inside, such that if they hear no sound at all or sounds that suggest that the occupant does not intend to answer, it is more likely to mean that the occupant is refusing to admit the police. *See id.* ¶¶ 8-9.

{29}    Even when, as here, a residence is small, New Mexico courts have approved waits only as short as ten seconds in the absence of exigent circumstances. *See id.* ¶¶ 9, 11 (holding that a ten-to-twenty-second wait was sufficient to support an inference that admission was being denied based on the fact that "a small space" was involved, the police heard movement inside, and the defendant made no verbal response); *State v. Johnson*, 2006-NMSC-049, ¶¶ 12-17, 140 N.M. 653, 146 P.3d 298 (holding that a ten-second wait was reasonable to infer constructive refusal based on the small size of the hotel room and the fact that the defendant did not respond in any way); *see also Gonzales*, 2010-NMCA-023, ¶¶ 3, 16 (holding that an eight-second wait was too short a time to infer constructive refusal); *cf. Lopez*, 2005-NMSC-018, ¶¶ 3, 19 (holding that a three-second wait was reasonable because the exigent circumstances exception applied). The ten-second wait found in some of New Mexico's cases is a very short time in which to expect one to gather oneself and come to the door, but it has been justified based on the particular circumstances of those cases. As one commentator has noted regarding the question of how long officers must wait for an occupant to answer before inferring constructive refusal,

> it has understandably been held that a wait of two to four seconds is inadequate. Generally, however, it may be said that courts have been unduly lenient on this score, holding that the police may proceed to enter after waiting no longer than ten or twenty seconds. . . . More understandable is the view that such brief periods will suffice when a reasonable inference may be drawn that the inhabitants of the house had observed the arrival of the police and were well aware of the officers' authority and purpose[.]

2 LaFave, *supra*, § 4.8(c), at 673-76 (internal quotation marks and citation omitted). This case requires us to determine whether the brief wait in this case was reasonable when officers could reasonably conclude that Dickson was aware of their presence as they approached the house and then of their purpose and authority once they knocked and announced that they had a warrant.

{30}    The parties disagree about the length of time that the officers waited before they forcibly entered Defendant's home. The district court found, based on a review of an officer's belt tape, that there were approximately three-and-a-half seconds before the door was breached. However, the district court did not indicate the starting point for its

count—whether it was when the officers started knocking or when they completed their statement that they had a search warrant. This lack of clarity is important because the appropriate starting point is from the time that the first announcement of the police's presence and purpose has been completed. *See Johnson*, 2006-NMSC-049, ¶ 11 (stating that the appropriate time to be measured is the time "*after* knocking and announcing and before forcing entry" (emphasis added)); *but see id.* (quoting a Tenth Circuit case for the proposition that the time begins when officers "begin to announce" their presence). The time period cannot begin when the police start to knock or when they announce that they are the police, because until the occupants are notified that the police are there to execute a search warrant, they have no reason to believe that they are required to either open the door or suffer a forcible entry. The State argues that this Court can review the belt tape and draw its own conclusion about the length of time that the officers waited since we may review the district court's findings to see if they are supported by substantial evidence in the record and since this Court is in as good a position to measure the time on the belt tape as the district court. However, we do not see this issue as a question of whether the district court's finding was correct but as a question of whether its measurement began at the appropriate time. This is a question of law on which we need not defer to the district court. *See State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307 (stating that an appellate court reviews de novo the district court's legal conclusions on a motion to suppress). The district court did not cite a starting point for its count. We conclude that the appropriate starting point was when officers completed their announcement, "Police department; search warrant." *See Johnson*, 2006-NMSC-049, ¶¶ 11-12 (measuring the time after the initial announcement was made and before the forcible entry began). The appropriate ending point is when the officers began to hit the door with the battering ram. *See id.* ¶ 11 ("When the officers began hitting the door with the battering ram, they ceased 'knocking' and began 'entering.'"). A review of the belt tape demonstrates that it was approximately one second after the officers completed the phrase "search warrant," that the officers struck the door with a battering ram. However, even if we were to calculate the time as three-and-a-half seconds, as did the district court, or as five seconds, as urged by the State, the calculation would not affect our analysis because any of these times is shorter than the time periods recognized as reasonable under our case law. Further, there is nothing within these particular circumstances that justifies a period shorter than has thus far been recognized as proper in our jurisprudence.

**{31}** Although the district court found that it was reasonable for the police to believe that Dickson saw them outside the residence, one second is simply too short a period of time to give the "occupants the time necessary to collect themselves and to prepare for the entry of the police before answering the door." *Vargas*, 2008-NMSC-019, ¶ 15; *see also Syakhasone*, 39 S.W.3d at 10-11 (holding that a two-to-five-second wait was too short, even when, as the officers approached the house to execute a warrant for drugs, the officers saw someone open a curtain, look in the officers' direction, and then pull the curtain back); *West v. United States*, 710 A.2d 866, 867-69 (D.C. 1998) (holding that a five-second wait was too short when, after police executing a warrant for drugs knocked and announced, they heard the video game that had been being played stop and heard the sound of footsteps in the house that were not coming to the door; these facts were ambiguous, since a person could stop

14

playing a video game in order to either exclude or admit the police, and even the most cooperative occupant might make the sound of footsteps in order to "fetch his bathrobe or slippers before coming to the door"); *DeMichel*, 277 A.2d at 164 (holding that a five-to-fifteen-second wait was too short when, after police executing a warrant for drugs announced their presence to someone who was looking at them through the blinds, the blinds were dropped); *see also Wynne v. Commonwealth*, 427 S.E.2d 228, 229-31 (Va. Ct. App. 1993) (holding that a five-second wait was not reasonable when the officers could see the occupants of the home inside, who were making no move to answer the door). It is therefore also too short a period from which to infer constructive refusal to voluntarily open the door. *See Hand*, 2008-NMSC-014, ¶ 7 (stating that constructive refusal may only be inferred if the occupants do not admit the officers within a reasonable period of time). Accordingly, under these circumstances, a one, three-and-a-half, or five second period of time cannot constitute a constructive refusal on the part of the home's occupants.

**{32}**     We recognize that, under the Fourth Amendment to the United States Constitution, when there are circumstances not amounting to an actual exigency but that raise the same types of concerns—such as the possibility of the destruction of evidence or the possibility that the occupants may have weapons—a court may properly take into account these concerns in assessing the reasonableness of the time that the police are required to wait. Under the Fourth Amendment, when the possibility of exigent circumstances exists but does not excuse the knock-and-announce rule altogether, the reasonableness assessment is based not on the time it would take for a person to collect oneself and answer the door, but on the time that it might take to do the harm sought to be prevented by the exception. *See Hudson*, 547 U.S. at 590 (citing *United States v. Banks*, 540 U.S. 31, 41 (2003), as an example in which the exigent circumstances exception did not excuse the knock-and-announce requirement, but the possibility of the destruction of drugs permitted the police to wait only the period that it might take for a person to attempt to destroy drugs, rather than a reasonable period for the person to answer the door or constructively refuse). This approach has been criticized because, although the Supreme Court has rejected a blanket exigent circumstances exception for drug cases, it seems to have substituted a blanket rule allowing for an extremely short wait once officers have knocked and announced their presence and authority. *See* 2 LaFave, *supra*, § 4.8(c), at 678 ("The major difficulty with the *Banks* Court's exigencies analysis is this:  while the Court claimed to have embraced the 'same criteria' as are used for no-knock searches and to have mandated a 'totality of the circumstances' approach, all of which would seem to mean that *Richards*[, 520 U.S. at 391-94] (proscribing use of a blanket rule whereby a risk of evidence destruction is assumed in all narcotics cases) also applies here, there seem to be no case-specific particularities involved in the Court's assessment of the risk that [the defendant] would destroy the cocaine."). Regardless,  the Fourth Amendment rule that the appropriate measure of time in cases involving drugs is the time it would take the occupants to begin destroying them, rather than the time it would take them for the occupants to come to the door, has not been adopted as part of our knock-and-announce jurisprudence under Article II, Section 10.  Even after *Banks*, our Supreme Court has stated that "[a]bsent exigent circumstances, officers must knock and announce their purpose and identity, then wait *a reasonable period of time to determine if consent to enter*

15

*will be given* before forcefully entering." *Johnson*, 2006-NMSC-049, ¶ 12 (emphasis added); *cf. Lopez*, 2005-NMSC-018, ¶ 23 (applying the *Banks* Fourth Amendment rule that reasonableness is assessed by reference to the time it would take for someone to attempt to engage in the conduct that the exigent circumstances exceptions seek to prevent to a case where the exigent circumstances exception applied based on an increased danger to officers, and stating that when, as in *Lopez*, the exigent circumstances exception applies, officers are permitted to "altogether dispense with the knock[-]and[-] announce rule or partially comply by knocking and announcing their identity and purpose before forcible entry, leaving the decision to the officers' judgment based on their experience"). *Johnson* was a case involving a search warrant for drugs, and, although it cited *Banks*, it did not conclude, as in *Banks*, that once the police officers knocked and announced their presence and purpose they created an exigency based on the possibility that the occupants would attempt to destroy the drugs. *See Johnson*, 2006-NMSC-049, ¶¶ 12-17. Instead, *Johnson* continued to evaluate the reasonableness of the police officers' wait by reference to how long it might take Johnson to answer the motel room door or for the police to reasonably infer constructive refusal to open the door. *Id.* Similarly, in *Hand*, which also involved a search for drugs, our Supreme Court looked to the time it would take for someone to come to the door or otherwise respond to the police. 2008-NMSC-014, ¶¶ 7-12. It did not consider the time it would take for someone who had been alerted to the presence of police to begin to destroy the drugs. *Id.* Thus, when exigent circumstances do not excuse the knock-and-announce requirement, under the New Mexico Constitution, the assessment of how long officers must reasonably wait between knocking and announcing and a forcible entry continues to be made by reference to the time that it would take someone to voluntarily respond or for the police to infer constructive refusal, not by the time that it would take for the occupants to engage in the behavior that the exigent circumstances exceptions seek to prevent.

**{33}**     We note that, even if we were to apply the Fourth Amendment standard, *Banks* found a time period of fifteen to twenty seconds to be reasonable in light of the possibility that the occupants of the home would hear the announcement by the police and then attempt to destroy the drugs sought under the warrant. *Banks*, 540 U.S. at 41. Here, with only a one-to-five-second wait, if *Banks* applied, it would not compel a conclusion that the delay in this case was reasonable.

**CONCLUSION**

**{34}**     The police's entry into Defendant's home after waiting only one to five seconds after knocking and announcing violated her right to be free of unreasonable searches under the New Mexico Constitution. Accordingly, the district court erred in denying Defendant's motion to suppress evidence obtained during the search. We reverse and remand to permit Defendant to withdraw her conditional plea. *See State v. Hodge*, 118 N.M. 410, 416, 882 P.2d 1, 7 (1994) (stating that where a defendant enters a conditional guilty plea, she is permitted to withdraw the plea after prevailing on appeal).

**{35}     IT IS SO ORDERED.**

16

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *State v. Jean-Paul*, No. 31,179**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Exclusionary Rule
Fourth Amendment
Interstitial Analysis
New Mexico Constitution, General
Suppression of Evidence

**CRIMINAL LAW**
Controlled Substances

**CRIMINAL PROCEDURE**
Exigent Circumstances
Reasonable Suspicion
Search and Seizure