This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**No. 33,374 Consolidated with 33,857**

**HEATHER LUCERO and LUIS CORONADO**,

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
Sergio Viscoli, Assistant Appellate Defender
B. Douglas Wood, Assistant Appellate Defender
Santa Fe, NM

for Appellee Heather Lucero

L. Helen Bennett, P.C.

L. Helen Bennett
Albuquerque, NM

for Appellee Luis Coronado

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     The district court granted Defendants' motions to suppress evidence after police officers, who executed a search warrant, failed to knock and announce their presence before entering Defendants' residence. The State appeals, arguing that exigent circumstances justified the officers' decision to enter without knocking and announcing. We affirm.

**BACKGROUND**

{2}     Albuquerque Police Department Central Narcotics Unit Detective Herman Martinez learned from a paid informant that a woman named Heather and her partner were dealing drugs out of their residence.[1] The informant told Detective Martinez what Heather looked like, that there were children in the residence, and that her partner was a member of the TCK gang who went by the nickname "Lobo." The informant told Detective Martinez that Lobo was "possibly" armed. Detective Martinez knew from experience that the TCK gang was "a very violent group that

---

[1]Our recitation of the facts is based on the testimony of Detective Martinez, Albuquerque Police Department Detective Kelly Sinclair, and D.M., Defendant Lucero's daughter, at the district court's hearing on Defendants' motions to suppress.

2

ha[d] committed murders, been involved in the drug trade, and [had] threatened witnesses in the past, including district judges and, I believe, also the DA."

{3}    Detective Martinez obtained a search warrant for the residence based on the information provided by the informant, but did not include any mention of Lobo in his probable cause affidavit. Detective Martinez testified that the reason he omitted any mention of Lobo in his application for a search warrant was that he was unable to locate photographs or other information that would allow him to identify Lobo. At a briefing before executing the warrant, Detective Martinez informed fellow officers that Lobo was "possibly" present at the house and that he was "known to carry a firearm."

{4}    Detective Martinez led the search team's approach to the house. Detective Martinez carried a door ram, and the officer behind him carried a tool for prying open security doors. The team planned to enter through a door on the South side of Defendants' residence beneath a carport. This entrance was protected by a wrought iron mesh security door. Detective Martinez tested the security door and found that it was unlocked. The interior door was ajar.

{5}    Peering through the wrought iron mesh security door, Detective Martinez observed a person moving away from the door. Although he could not identify the person through the security door, Detective Martinez surmised from the character of

3

the figure's movement that the person "had seen us, and was running away from the door, possibly to arm themselves or to destroy evidence." Detective Martinez immediately yelled "compromise[!]" three or four different times. Detective Martinez opened the door and stood to the side while the rest of the search team entered the residence. Members of the team yelled "Police[!] Search warrant[!]" as they entered. The officers found narcotics and narcotics paraphernalia in the house, and Defendants were charged by indictment with drug trafficking, drug possession with intent to distribute, possession of drug paraphernalia, child abuse, conspiracy to commit child abuse, and possession of a controlled substance.

{6} Defendants each filed a motion to suppress the State's evidence, arguing that the police officers' failure to knock and announce their presence prior to entering their residence violated Defendants' rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *See State v. Attaway*, 1994-NMSC-011, ¶¶ 11-41, 117 N.M. 141, 870 P.2d 103 (describing the"knock-and-announce" requirement under the Fourth Amendment and Article II, Section 10), *holding modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶¶ 18-19, 138 N.M. 9, 116 P.3d 80. The State responded that the information provided by the informant that an armed member of the TCK gang might be inside the house

created an exigency that justified entry without announcement.[2]

{7} The district court granted Defendants' motions to suppress. It concluded that the fact "that there was possibly—and I stress 'possibly'—a TCK member[,] who may—and I stress the word 'may'—be staying at the residence and who may also, once again, be armed, and [that] information came from a paid confidential informant who may or may not be reliable" did not create an exigency justifying the officers' failure to announce their presence before entering the residence to effectuate the search warrant. The State appeals the district court's order suppressing evidence.

**STANDARD OF REVIEW**

{8} "In reviewing the grant of a motion to suppress, this Court must determine whether the law was correctly applied to the facts, viewing the facts in a light most favorable to the [district] court's ruling." *State v. Chavarria*, 2001-NMCA-095, ¶ 2, 131 N.M. 172, 33 P.3d 922 (alteration, internal quotation marks, and citation omitted). The district court's findings of fact are accepted as true so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Gonzales*, 2010-NMCA-023, ¶ 4, 147 N.M. 735, 228 P.3d 519

---

[2]Alternatively, the State argued that under *Hudson v. Michigan*, 547 U.S. 586 (2006), suppression was not an appropriate remedy for the officers' failure to announce themselves before executing the search warrant. But the State concedes on appeal that so long as *Attaway* remains good law, suppression remains the default remedy for knock-and-announce violations in New Mexico courts. *See Attaway*, 1994-NMSC-011, ¶ 22 n.6.

5

(alteration, internal quotation marks, and citation omitted).

**DISCUSSION**

**{9}**     "In New Mexico, law enforcement officers are constitutionally required to knock and announce their identity and purpose, and wait a reasonable time to determine if consent to enter will be given prior to forcefully entering a dwelling in order to execute a search warrant." *State v. Hand*, 2008-NMSC-014, ¶ 7, 143 N.M. 530, 178 P.3d 165 (alteration, internal quotation marks, and citation omitted). "By requiring the police to announce the fact that they have a warrant and then give the occupants time to voluntarily answer the door, the knock-and-announce rule protects those elements of privacy and dignity that can be destroyed by a sudden entrance and gives occupants the time necessary to collect themselves and to prepare for the entry of the police before answering the door." *State v. Jean-Paul*, 2013-NMCA-032, ¶ 9, 295 P.3d 1072 (internal quotation marks and citation omitted). "The rule serves a number of additional purposes, including preventing the needless destruction of property, reducing the risk of violence to both occupants and police, and permitting an opportunity for the occupants to comply with the law." *Id.*

**{10}**     Because the knock-and-announce rule is "part of the constitutional protections against unreasonable searches and seizures embodied in [A]rticle II, [S]ection 10 of the New Mexico Constitution, and the Fourth Amendment to the United States

6

Constitution . . . . the ultimate question underlying any purported knock-and-announce violation is whether the search and seizure was reasonable." *State v. Vargas*, 2008-NMSC-019, ¶ 11, 143 N.M. 692, 181 P.3d 684 (alteration, internal quotation marks, and citations omitted). There are at least two circumstances where an officer's failure to knock and announce is deemed reasonable: (1) when obeying the knock-and-announce requirement would be futile, and (2) when exigent circumstances counsel against knocking and announcing. *Jean-Paul*, 2013-NMCA-032, ¶ 10. "The futility exception applies when it is clear that the authority and purpose of the police are already known to those within the premises, such that knocking and announcing that the police intend to execute a warrant would serve no purpose." *Id.* "Exigent circumstances include situations involving, among other things, a demonstrable risk that evidence will be destroyed while the officers wait to be denied entry, or specific information indicating that the danger to the officers executing the warrant will be increased, rather than decreased, if the officers comply with the rule." *Id.* (alteration, internal quotation marks and citation omitted).

{11} "To determine whether an exception applies, a court must look to the totality of the circumstances at the time of entry from the point of view of a reasonable, well-trained, and prudent police officer to decide whether the officer had a reasonable belief that there were exigent circumstances or that knocking and announcing would

7

be futile." *Id.* ¶ 11 (internal quotation marks and citation omitted). "The reasonableness of an officer's belief is measured under a reasonable suspicion standard, which is not high but which requires specific, articulable facts, together with reasonable inferences therefrom, as a basis for concluding that the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Id.* (internal quotation marks and citation omitted). "In determining whether exigent circumstances existed, the appellate court must weigh underlying policy considerations, and balance competing legal interests, specifically between the safety of law enforcement officers and Fourth Amendment privacy interests." *Lopez*, 2005-NMSC-018, ¶ 11 (alteration, internal quotation marks, and citation omitted).

{12}     The State argues that the police officers had an objectively reasonable basis to conclude that entry into Defendants' residence without knocking and announcing was required in order to protect their physical safety. The State's brief in chief identifies the following facts as furnishing a sufficient basis for this conclusion: (1) the officers had probable cause to believe that the residence was being used as a base for a heroin trafficking operation; (2) the informant's report that a member of the TCK gang was Defendant Lucero's boyfriend, who might be present and armed inside the residence at the time of the search; and (3) Detective Martinez's personal experience with the

8

TCK gang and its history of violence.

{13} The State's brief argues that this case is analogous to cases where courts have found exigent circumstances based on the presence of weapons, *see id.* ¶ 19, or a member of a gang with a reputation for violence, *see Vargas*, 1996-NMCA-016, ¶ 12, inside the residence to be searched. But the State's argument mischaracterizes the district court's rationale for suppressing the State's evidence. The district court did not reason that the presence of an armed gang member failed to establish exigent circumstances as a matter of law; rather, it concluded that there was inadequate evidence for a reasonable officer to conclude that such an exigency existed in the first place.

{14} This conclusion was based on a number of findings that the State fails to challenge on appeal. First, the district court questioned the reliability of the paid informant who told Detective Martinez that a dangerous gang member might be inside Defendants' residence. Second, the district court found that even if the informant was reliable, the informant's information provided at most a basis for further investigation, not reasonable suspicion: in the district court's words, the informant informed Detective Martinez that "there was possibly—and I stress 'possibly'—a TCK member . . . [w]ho may—and I stress the word 'may'—be staying at the residence and [w]ho may also, once again, be armed[.]" In other words, the district court concluded that it

9

would not be reasonable to infer that an armed member of the TCK gang was in fact inside the home at the time of the search based only on the informant's vague and equivocal statements to that effect. Moreover, by failing to challenge these findings on appeal and instead characterizing the question on appeal exclusively as one of law, the State has waived its opportunity to challenge the district court's findings of fact, and therefore whatever viable basis which may have existed to overturn the district court's suppression order. *See Stroope v. Potter*, 1944-NMSC-049, ¶ 27, 48 N.M. 404, 151 P.2d 748 (explaining that the appellant bears the burden of demonstrating that a district court's finding of fact is unsupported by substantial evidence).

{15} Even if the State hadn't waived its challenge to the district court's finding that the informant's tip was either unreliable or insufficiently specific to give rise to reasonable suspicion, there is ample evidence to support the district court's conclusion. The informant gave Detective Martinez concrete, specific information about one suspect: her first name "Heather," her "physical description," hair color, the length of her hair, even the color of her eyes. By contrast, the most the informant could say about Lobo was that he was a member of the TCK gang, a Hispanic male who "might be" at the residence, and who "possibly had a handgun." Detective Martinez testified that he tried to but could not verify Lobo's identity. Tellingly, Detective Martinez did not include any reference to Lobo in his application for a

search warrant or in the police report he filed after the warrant was executed. And on cross examination, Detective Martinez conceded his fear that there might be weapons in the residence was more of a "general" fear that he felt whenever he executed a search warrant, not a specific fear arising from what the informant told him. While this evidence is not relevant to the objective reasonableness of Detective Martinez's actions, it supports the district court's conclusion that the informant's reports about Lobo were too vague and generalized to provide a reasonable basis for concluding that Lobo was actually inside the house at the time Detective Martinez approached the door. *See Jean-Paul*, 2013-NMCA-032, ¶ 11 (stating that a police officer must possess "specific, articulable facts, together with reasonable inferences therefrom, as a basis for concluding that the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." (internal quotation marks and citation omitted)). Viewing this evidence in the light most favorable to the district court's order suppressing evidence, as our standard of review demands, we agree with the district court's conclusion that the informant's vague and unverifiable statements about a "possibly" armed gang member who "might" be present in Defendants' residence did not furnish a reasonable basis to conclude that a dangerous gang member was in fact inside Defendants' residence at the time Detective Martinez

entered.[3] Our precedents do not allow the substitution of a mere possibility for "specific, articulable facts" in this context. *Id.* (internal quotation marks and citation omitted).

**CONCLUSION**

{16}    We affirm the district court.

{17}    **IT IS SO ORDERED.**


                                _____

                                **J. MILES HANISEE, Judge**

**WE CONCUR:**


_____

**MICHAEL E. VIGIL, Chief Judge**


_____

**RODERICK T. KENNEDY, Judge**

---

[3]In addition to waiving any argument challenging the district court's findings of fact, the State has also failed to argue that Detective Martinez's reliance on the informant's statements about Lobo was reasonable at the time of the entry based on the magistrate's earlier determination that the informant was reliable enough to provide probable cause for the issuance of a search warrant. Because this argument was not raised by the State, this decision should not be read as rejecting this or any other possible argument that Detective Martinez's actions were reasonable under the totality of the circumstances despite the absence of reasonable suspicion of exigent circumstances.